IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 13-113 |
| | ) | |
| PETER WOODLEY | ) | |

OPINION

DIAMOND, D.J.

On March 22, 2013, a criminal complaint was filed against defendant Peter Woodley alleging that he violated various provisions of the Controlled Substances Act relating to the distribution of heroin. On April 16, 2013, a grand jury returned a two-count indictment against defendant charging him with conspiracy to distribute and possess with intent to distribute heroin from in and around December 2011, until in and around August 2012, in violation of 21 U.S.C. §846 (Count One), and possession with intent to distribute heroin on or about March 20, 2013, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(B)(i).

Defendant has filed the following pretrial motions: (1) Motion to Suppress (Document No. 32); (2) Motion for Discovery (Document No. 28); (3) Motion for Disclosure of Promises of Leniency and/or Existence of Plea Bargain Agreements (Document No. 29); (4) Motion to Dismiss (Document No. 30); and (5) Motion for Ordering of Government's Proof or for a Separate Hearing

to Determine the Existence of a Conspiracy (Document No. 31).[1] The government filed an omnibus response to defendant's pretrial motions (Document No. 43), and the court subsequently held oral argument on the motions. After considering the parties' written submissions and the arguments of counsel, defendant's Motion to Suppress will be denied, and his other pretrial motions will be granted in part and denied in part as explained below.

I. **Background**

As an initial matter, government counsel submitted at oral argument that the court should decide defendant's Motion to Suppress based on the parties' written submissions because defendant made no allegation of any misrepresentation in the affidavit in support of the application for the search warrant, as evidenced by the fact that he did not file a motion for a <u>Franks</u> hearing.

Pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978), upon an appropriate showing, a defendant has the right to an evidentiary hearing to challenge the truthfulness of statements made in a search warrant affidavit establishing probable cause. To establish that a <u>Franks</u> hearing is warranted, the defendant must make a substantial preliminary showing that the affidavit contained a false statement, which was made knowingly and intentionally or with reckless disregard for the truth, and which is necessary to the finding of probable cause. <u>Franks</u>, 438 U.S. at 155-56, 171. In order to make the substantial preliminary showing, the defendant cannot rest on mere conclusory allegations or a "mere desire to cross-examine," but rather must specifically

---

[1] Attorney Melvin Vatz, who was defendant's first CJA appointed counsel, filed these pretrial motions on his behalf. Defendant became dissatisfied with Attorney Vatz's representation, and requested the appointment of new counsel. Following a hearing, the court granted defendant's request and Attorney James Brink was appointed to represent him.

2

identify the alleged false statements or omissions in the affidavit and present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses. [2] Id. at 171; see also United States v. Yusef, 461 F.3d 374, 383 n. 8 (3d Cir. 2006).

The government is correct that defendant has not filed a Franks motion arguing that he is entitled to a hearing because the affidavit in support of the application for the search warrant contained factual averments that were deliberately false or made with reckless disregard for the truth. Further, the arguments presented by defendant's counsel at the hearing in no way indicate that defendant would be able to make the substantial preliminary showing required by Franks to establish that he is entitled to a hearing. Although defendant's counsel initially suggested that some of the statements contained in the affidavit in support of the search warrant at issue were not accurate, he later acknowledged that the agent who prepared the affidavit did not intentionally misrepresent facts that would give rise to a Franks hearing. Rather, defense counsel argued that the contents of the affidavit did not establish probable cause to arrest defendant and to seize and search his duffle bag.

Because defendant challenges the probable cause determination, the court will confine its review to the four corners of the affidavit that was before the magistrate judge. See United States v. Zimmerman, 277 F.3d 426, 431, n. 3 (3d Cir. 2002) (when considering a challenge to a search warrant, the district court's review is confined to the contents of the affidavit of probable cause that

---

[2]If a Franks hearing is held, and the defendant proves by a preponderance of the evidence that the false statements or omissions were made knowingly and intentionally or with a reckless disregard for the truth, and with the affidavit's false material set aside, the remaining content is insufficient to establish probable cause, then the warrant must be voided and the fruits of the search must be excluded from the trial. Franks, 438 U.S. at 156; see also United States v. Frost, 999 F.2d 737, 742-43 (3d Cir. 1993).

3

was before the magistrate). In conducting our review, we are mindful that the task of the magistrate who reviews the affidavit in support of a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before her, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Illinois v. Gates, 462 U.S. 213, 238 (1983). We also are mindful that our duty as the reviewing court "is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing] that probable cause existed." Id. at 238-39.

In this case, we review the Affidavit in Support of Application for Search Warrant prepared by Drug Enforcement Administration ("DEA") Special Agent Melissa Cobb, which was before United States Magistrate Judge Maureen Kelly on March 20, 2013. Special Agent Cobb's Affidavit incorporated the Application and Affidavit for Disclosure of Location Data Relating to [defendant's] Wireless Telephone dated March 11, 2013, completed by Narcotics Sergeant Christopher Bouye of the New Castle City Police Department and a Task Force Officer with the DEA. Special Agent Cobb's Affidavit and Sergeant Bouye's Application and Affidavit, which both are attached as exhibits to the government's response, set forth the information that follows.

The DEA, along with local law enforcement agencies, conducted an investigation of a heroin trafficking organization involving an individual known as "P", who was later identified as defendant. In connection with the investigation, the DEA utilized a confidential source ("CS") who had been involved in the organization. The CS is federally charged with participating in the heroin distribution conspiracy, and is cooperating with the government with the hope of reducing his or her sentence.

On March 5, 2013, the CS received an e-mail message from a female who advised that "P"

4

AO 72
(Rev. 8/82)

wanted to contact the CS. The female provided the CS with P's telephone number, and the CS spoke with "P" to arrange a meeting to discuss future heroin transactions.

On March 6, 2013, the CS placed a consensually recorded phone call to "P" and arranged to meet him in Pittsburgh. On that day, while under constant surveillance by law enforcement agents, the CS met with "P" and discussed future heroin transactions. The CS told the agents that "P" is from New Jersey and travels to Pittsburgh by Greyhound bus to transport hundreds of bricks of heroin. According to the CS, he/she had purchased heroin from "P" in the past and "P's" mode of travel had been consistent.

During the controlled meeting that occurred, which was recorded with the CS's consent and observed by agents the entire time, "P" advised the CS that he would return to Pittsburgh with several hundred bricks of heroin at the end of the next week. "P" agreed to provide the CS with approximately 100 bricks of heroin when he returned to Pittsburgh. The CS understood that "P" would travel to Pittsburgh by Greyhound bus as he had done in the past.

Based on this information obtained from the CS, on March 11, 2013, Sergeant Bouye applied for and obtained court authorization directing that "P's" telephone company provide data location information, so that the agents could track the location of his cellular telephone.

On March 19, 2013, "P" contacted the CS and indicated that he would travel to Pittsburgh the next day on the Greyhound bus to provide the CS with heroin. The data location information confirmed that the cellular telephone associated with "P" traveled from New Jersey to Pittsburgh and arrived at approximately 6:00 a.m. on March 20, 2013.

Agent Cobb observed the individual known as "P" exit a Greyhound bus carrying a brown duffle bag with gray straps. "P", who was identified as defendant, and the duffle bag were detained

5

while Agent Cobb completed the affidavit in support of the application for a warrant to search the duffle bag. Based on the foregoing information, Agent Cobb averred that there was "probable cause to believe that Peter Woodley, who is also known as Darren Brown, agreed to supply a substantial quantity of heroin to [the CS], and that Woodley traveled from the New Jersey area to the Pittsburgh area on March 20, 2013 for the purpose of delivering heroin to [the CS]."

On March 20, 2013, at 9:25 a.m., Magistrate Judge Kelly authorized the execution of a warrant to search the duffle bag. The agents' search of the bag uncovered approximately 100 grams of heroin. The agents then arrested defendant.

## II. Motion to Suppress (Document No. 32)

Defendant argues that when he exited the Greyhound bus at 6:00 a.m. on March 20, 2013, he was detained so that the agents could obtain a search warrant for his duffle bag. According to defendant, the detention constituted an arrest without probable cause, rather than a Terry stop, because he was not free to leave. Defendant also claims that detaining his bag in excess of three hours so that a warrant could be obtained to search it was an unreasonable detention of his personal property that exceeded the permissible period for law enforcement to conduct a brief, investigatory stop. Because he was arrested without probable cause and his personal property was detained without a warrant for an excessive period of time, defendant contends the search warrant that was obtained was invalid and all evidence seized as a result of the search must be suppressed.

Even assuming defendant is correct that his detention was so prolonged that it was not a

6

Terry stop[3] but rather a *de facto* arrest, that arrest was supported by probable cause. Probable cause for a warrantless arrest exists when the officer has reasonable grounds to believe that an offense has been or is being committed. United States v. Watson, 423 U.S. 411, 417-18 (1976); see also Beck v. Ohio, 379 U.S. 89, 91 (1964) (probable cause exists whenever circumstances within a police officer's knowledge are sufficient to warrant a prudent person to conclude that an offense has been committed by the person being arrested).

Here, the agents had ample probable cause to arrest defendant when he exited the Greyhound bus. The agents had obtained information from the CS that defendant previously had traveled from New Jersey to Pittsburgh by Greyhound bus to transport heroin. While under constant surveillance by law enforcement agents, the CS met with defendant on March 6, 2013, to discuss future heroin transactions. At that time, defendant agreed to provide the CS with heroin when he returned to Pittsburgh at the end of the next week. On March 19, 2013, defendant contacted the CS to advise that he would be traveling to Pittsburgh by Greyhound bus the next day with heroin. Data location information showed that the same cellular telephone which defendant used to contact the CS traveled from New Jersey to Pittsburgh on March 20, 2013, and arrived at the Greyhound bus station at 6:00 a.m. that day. The agents then observed defendant exit a Greyhound bus while carrying a duffle bag.

---

[3] In Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court held that "police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, 392 U.S. at 30). The Supreme Court has explained that a Terry stop must be limited in duration and that a more lengthy detention "must be based on consent or probable cause." Dunaway v. New York, 442 U.S. 200, 212 (1979). As explained herein, even if defendant is correct that his detention was not a Terry stop, the information set forth in Special Agent Cobb's Affidavit establishes that the law enforcement agents had probable cause to arrest him when he exited the Greyhound bus.

AO 72
(Rev. 8/82)

Under these circumstances, probable cause existed to arrest defendant. If the agents had immediately arrested defendant, they would have been permitted to conduct a search incident to his arrest of the duffle bag that he was carrying. See United States v. Shakir, 616 F.3d 315, 321 (3d Cir. 2010) (holding that a search incident to an arrest is permissible when "there remains a reasonable possibility" that the arrestee could destroy evidence or access a weapon in the container or area being searched). For these reasons alone, defendant's motion to suppress evidence must be denied.

Instead of immediately placing defendant under arrest and searching the duffle bag, however, the agents detained him while they obtained a search warrant for the bag. The warrant was authorized by Magistrate Judge Kelly at 9:25 a.m., approximately three and a half hours after defendant exited the Greyhound bus and was detained. Defendant was arrested after the duffle bag was searched and heroin was found inside of it.

Defendant relies on United States v. Place, 462 U.S. 696 (1983), in arguing that the detention of his duffle bag was unreasonable. In Place, law enforcement agents stopped the defendant after he arrived in an airport and seized his luggage for 90 minutes so that it could be sniffed by a narcotics detection dog. The Supreme Court analogized the temporary seizure of a person, which is constitutional under Terry, to the temporary seizure of luggage, and held that the temporary detention of luggage is constitutional "provided that the investigative detention is properly limited in scope." Place, 462 U.S. at 706. The Court found that the 90-minute delay before federal agents used a narcotics detection dog to sniff the defendant's luggage was sufficient "alone [to preclude] the conclusion that the seizure was reasonable in the absence of probable cause." Id. at 709.

AO 72
(Rev. 8/82)

It is important to note that the Supreme Court declined to adopt an outside time limit on the duration of an investigatory detention. Place, 462 U.S. at 709. The Court explained that it understood "the desirability of providing law enforcement authorities with a clear rule to guide their conduct[, but] . . . question[ed] the wisdom of a rigid time limitation . . . [which] would undermine the equally important need to allow authorities to graduate their responses to the demands of any particular situation." Id., n. 10. In assessing the effect of the length of the detention, the Supreme Court emphasized the need to "take into account whether the police diligently pursue[d] their investigation." Id. Considering that factor in Place, the Court found the 90-minute seizure involved there was unreasonable because the agents knew the defendant's scheduled arrival time for several hours in advance, and they could have arranged for a narcotics dog ahead of time, thereby avoiding the need to hold the luggage for 90 minutes. Id.

In the instant case, defendant's duffle bag was detained for approximately three and a half hours, which would appear to run afoul of Place. However, the facts of this case are distinguishable from Place. While the agents knew the date defendant would travel to Pittsburgh by Greyhound bus, unlike the situation in Place, there is no indication that the agents knew defendant's scheduled arrival time and could have done something in advance to minimize the delay. When defendant arrived at 6:00 a.m., the agent had to prepare an affidavit in support of the search warrant for his duffle bag and present it to a United States Magistrate Judge, but the Federal Courts were not open at that early hour. By 9:25 a.m., the affidavit had been presented to Magistrate Judge Kelly and the warrant was authorized. Under the circumstances presented here, law enforcement acted diligently to pursue their investigation, which distinguishes this case from Place.

9

As initially stated, however, the agents had probable cause to arrest defendant when he exited the Greyhound bus and they could have searched his duffle bag incident to an arrest. Nevertheless, the agents opted to detain defendant's bag and obtain a warrant to search it. Although defendant's bag was detained in excess of three hours, the agents diligently pursued their investigation by obtaining the search warrant as soon as possible under the circumstances. Accordingly, defendant's motion to suppress evidence will be denied.

### III. Defendant's Other Pretrial Motions

#### A. Motion for Discovery (Document No. 28)

Defendant has filed a motion for discovery requesting the following: (1) any laboratory reports regarding the heroin that was seized; (2) an e-mail message dated March 5, 2013; (3) pictures, videos or other images of defendant obtained prior to the time of his detention and arrest; and (4) all information used by government agents to determine defendant's identity prior to detaining him.

The government responds that the heroin currently is at the DEA laboratory awaiting analysis, thus there is no report available at this time. The government has agreed to provide defendant with a copy of the report once it is completed, and the court will enter an order requiring the government to do so.

With respect to items (2), (3) and (4) listed above, the government states that it has now made those items available to defendant. Accordingly, the court will deny as moot defendant's request for discovery of those materials.

AO 72
(Rev. 8/82)

B.  **Motion for Disclosure of Promises of Leniency and/or Existence of Plea Bargain Agreements (Document No. 29)**

Defendant has filed a motion requesting that the government disclose any plea bargain agreements or promises of leniency made by the government to its confidential informant or any other witnesses. This motion in effect requests impeachment material under Brady v. Maryland, 373 U.S. 83 (1963), which includes Giglio material, or evidence that relates to a confidential informant's or a co-conspirator's deal with the government for leniency. Giglio v. United States, 405 U.S. 150, 154-55 (1972).

The government concedes that defendant is entitled to this information, and suggests it would be appropriate to provide it to defendant along with Jencks Act material three days prior to trial. Such disclosure complies with relevant Third Circuit case law. See United States v. Higgs, 713 F.2d 39, 44 (3d Cir. 1983) (holding that disclosure of Brady impeachment material can be made the day that government witnesses are to testify at trial without violating defendant's due process rights). Accordingly, the court will order the government to provide defendant with Brady impeachment material, including Giglio material, three days before trial.

C.  **Motion to Dismiss (Document No. 30)**

Defendant has filed a motion to dismiss Count One of the indictment charging him with conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. §846. According to defendant, the government's allegations are based on conversations between him and a CS concerning the distribution of heroin. Defendant argues that the government cannot prove a conspiracy between him and a government informant, and there is no evidence that anyone other than an informant participated in the conspiracy, thus Count One must be dismissed.

11

Defendant is correct that one cannot be convicted of conspiring only with a government agent or informant. In Sears v. United States, 343 F.2d 139, 142 (5th Cir. 1965), the Fifth Circuit established the rule that "as it takes two to conspire, there can be no indictable conspiracy with a government informer who secretly intends to frustrate the conspiracy." See also United States v. Corson, 579 F.3d 804, 811 (7th Cir. 2009) ("[a] defendant is not liable for conspiring solely with an undercover government agent or a government informant."); United States v. Lively, 803 F.2d 1124, 1126 (11th Cir. 1986) (holding that the district court's failure to instruct jury concerning inability of government informant to conspire with another person was reversible error in prosecution for conspiracy to distribute cocaine, where alleged co-conspirator who received cocaine from the defendant became a government informant during course of conspiracy).

In this case, Count One of the indictment alleges that defendant participated in a heroin distribution conspiracy between December, 2011 and August, 2012. According to the government, members of the conspiracy included defendant and the CS. After completion of the conspiracy, the CS began to cooperate with the government in its investigation of defendant, who supplied heroin to the CS during the conspiracy. The cooperation of the CS eventually led to defendant's arrest in March, 2013. At that point, the CS and defendant were not participating in a conspiracy, and defendant is not charged with conspiring to distribute heroin at that time.[4]

Contrary to defendant's position, the CS apparently did not become a government informant until after the time period of the conspiracy alleged in the indictment, thus dismissal of Count One is not warranted. See United States v. Cousar, 2013 WL 4517099, at *2 (4th Cir. 2013)

---

[4]Count Two of the indictment charges defendant with possession with intent to distribute 100 grams or more of heroin on or about March 20, 2013.

(holding that the evidence in a case involving conspiracy to distribute crack cocaine did not warrant an instruction on a defense that the defendant could not be guilty of conspiring only with a government informant where the defendant entered the charged conspiracy with the co-defendant before the co-defendant became an informant). Accordingly, defendant's motion to dismiss Count One of the indictment will be denied at this time, with leave for defendant to renew his motion if the government fails to prove at trial that he participated in a conspiracy with any individuals other than a government informant during the time period alleged in Count One.

### D. Motion for Ordering of Government's Proof or for a Separate Hearing to Determine the Existence of a Conspiracy (Document No. 31)

Defendant has moved for a pretrial hearing pursuant to United States v. James, 590 F.2d 575 (5th Cir. 1979), to determine whether a conspiracy existed and the admissibility of statements of alleged co-conspirators under the exception to the hearsay rule set forth in Fed.R.Evid. 801(d)(2)(E).[5]

The government suggests that a pretrial determination as to the admissibility of co-conspirator statements is neither practical nor necessary in this case. Instead, the court should determine the admissibility of out-of-court statements at trial.

In this circuit, there is no authority for holding a separate hearing on the admissibility of co-conspirator statements. See United States v. Ammar, 714 F.2d 238, 246-47 (3d Cir. 1983). In addition, "the control of the order of proof at trial is a matter committed to the discretion of the

---

[5]Pursuant to Rule 801(d)(2)(E), a statement is not hearsay if "[t]he statement is offered against an opposing party and . . . was made by the party's co-conspirator during and in furtherance of the conspiracy." Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), the government must establish by a preponderance of the evidence: (1) that there was a conspiracy involving the declarant and the non-offering party; and (2) that the statement was made during the course and in furtherance of the conspiracy. Bourjaily v. United States, 483 U.S. 171, 175 (1987).

13

trial judge," United States v. Continental Group, Inc., 603 F.2d 444, 456 (3d Cir. 1979), and it is well settled that a pretrial hearing need not be conducted in every case where the government seeks to introduce a co-conspirator's statements against a defendant. Ammar, 714 F.2d at 247. Because there is no authority for a mandatory pretrial hearing on the admissibility of co-conspirator statements, and the tendency is to yield to the trial court's discretion as to the order of proof at trial, defendant's motion for a pretrial James hearing will be denied.

## IV. Conclusion

For the foregoing reasons, defendant's Motion to Suppress Evidence will be denied, and his other pretrial motions will be granted in part and denied in part as explained herein. An appropriate order will follow.

*/s/ Gustave Diamond*
Gustave Diamond
United States District Judge

Date: December 30, 2013

cc: Brendan T. Conway
    Assistant U.S. Attorney

    James J. Brink, Esq.
    428 Forbes Ave.
    Suite 1600
    Pittsburgh, PA 15219

AO 72
(Rev. 8/82)