IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 13-113 |
| | ) | |
| PETER WOODLEY | ) | |

OPINION

DIAMOND, D.J.

Presently before the court is defendant's Pretrial Motion for a <u>Franks</u> Hearing (Document No. 65) and the government's Response in opposition thereto (Document No. 69). For reasons explained below, defendant's Motion will be denied.

I. **Procedural History**

On March 22, 2013, a criminal complaint was filed against defendant Peter Woodley alleging that he violated various provisions of the Controlled Substances Act relating to the distribution of heroin. On April 16, 2013, a grand jury returned a two-count indictment against defendant charging him with conspiracy to distribute and possess with intent to distribute heroin from in and around December 2011, until in and around August 2012, in violation of 21 U.S.C. §846 (Count One), and possession with intent to distribute heroin on or about March 20, 2013, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(B)(i).

Defendant previously filed the following pretrial motions: (1) Motion to Suppress; (2) Motion for Discovery; (3) Motion for Disclosure of Promises of Leniency and/or Existence of Plea

Bargain Agreements; (4) Motion to Dismiss; and (5) Motion for Ordering of Government's Proof or for a Separate Hearing to Determine the Existence of a Conspiracy. Attorney Melvin Vatz, who was defendant's first CJA appointed counsel, filed these pretrial motions on his behalf.

Defendant became dissatisfied with Attorney Vatz's representation, and requested the appointment of new counsel. Following a hearing, the court granted defendant's request and Attorney James Brink was appointed to represent him.

Attorney Brink represented defendant at the hearing on his Motion to Suppress. The court subsequently entered an opinion and order on December 30, 2013, denying defendant's suppression motion and granting in part and denying in part defendant's other pretrial motions. The court also scheduled trial to begin on January 27, 2014.

At a pretrial status conference held on January 23, 2014, defendant asserted that he was dissatisfied with Attorney Brink, who moved to withdraw as his counsel. The court granted Attorney Brink's motion, and rescheduled trial to begin on April 21, 2014.

On January 29, 2014, Attorney James Robinson was appointed to represent defendant. On April 8, 2014, the court held a status conference with the parties, at which time Attorney Robinson indicated his intent to file a motion to continue the April 21, 2014, trial date. Defendant indicated his agreement with the request for a trial continuance, as well as his understanding that the resulting delay would be caused by his request and by his stated desire to file additional pretrial motions that he claims were not filed by his prior counsel.

On April 14, 2014, the court granted defendant's motion to continue the trial until August 25, 2014, to give Attorney Robinson ample time to prepare defendant's case. Despite the fact that the time for filing pretrial motions had long since passed, the court permitted defendant to file all

2

pretrial motions he wished to file by April 21, 2104.

On April 21, 2014, defendant filed his Motion for a <u>Franks</u> Hearing. The government subsequently filed its Response in opposition to defendant's Motion. After review and consideration of defendant's Motion, the court finds that it is without merit and it will be denied.[1]

II. **Background**

At issue in defendant's Motion for a <u>Franks</u> Hearing is an Application and Affidavit dated March 11, 2013, for Disclosure of Location Data Relating to a Wireless Telephone, which was completed by Narcotics Sergeant Christopher Bouye of the New Castle City Police Department and Task Force Officer with the Drug Enforcement Administration ("DEA"), a copy of which is attached as an exhibit to defendant's Motion (hereinafter, "Sergeant Bouye's Affidavit"). Information contained in Sergeant Bouye's Affidavit was incorporated into the Affidavit in Support of Application for Search Warrant prepared by DEA Special Agent Melissa Cobb (hereinafter, "Special Agent Cobb's Affidavit").[2] Special Agent Cobb's Affidavit and Sergeant Bouye's Affidavit set forth the information that follows.

The DEA, along with local law enforcement agencies, conducted an investigation of a

---

[1]Prior to the filing of this Opinion, on July 15, 2014, the grand jury returned a three-count superseding indictment against defendant charging him with conspiracy to distribute and possess with intent to distribute heroin from in and around December 2011, until in and around August 2012, in violation of 21 U.S.C. §846 (Count One), possession of a firearm by a convicted felon on or about September 17, 2012, in violation of 18 U.S.C. §§922(g)(1) and 924(e) (Count Two), and possession with intent to distribute heroin on or about March 20, 2013, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(C) (Count Three).

[2]Special Agent Cobb's Affidavit previously was made part of the record in this case and is attached as an exhibit to the government's Omnibus Response to defendant's earlier pretrial motions. <u>See</u> Document No. 43, Ex. B.

3

heroin trafficking organization involving an individual known as "P", who was later identified as defendant. In connection with the investigation, the DEA utilized a confidential source ("CS") who had been involved in the organization. The CS is federally charged with participating in the heroin distribution conspiracy, and is cooperating with the government with the hope of reducing his or her sentence.

On March 5, 2013, the CS received an e-mail message from a female who advised that "P" wanted to contact the CS. The female provided the CS with P's telephone number, and the CS spoke with "P" to arrange a meeting to discuss future heroin transactions.

On March 6, 2013, the CS placed a consensually recorded phone call to "P" and arranged to meet him in Pittsburgh. On that day, while under constant surveillance by law enforcement agents, the CS met with "P" and discussed future heroin transactions. The CS told the agents that "P" is from New Jersey and travels to Pittsburgh by Greyhound bus to transport hundreds of bricks of heroin.[3] According to the CS, he/she had purchased heroin from "P" in the past and "P's" mode of travel had been consistent.

During the controlled meeting that occurred, which was observed by agents the entire time, "P" advised the CS that he would return to Pittsburgh with several hundred bricks of heroin at the end of the next week. "P" agreed to provide the CS with approximately 100 bricks of heroin when he returned to Pittsburgh. The CS understood that "P" would travel to Pittsburgh by Greyhound bus as he had done in the past.

Based on this information obtained from the CS, on March 11, 2013, Sergeant Bouye

---

[3] According to the government, the CS reported the content of the conversation to the agents, but the audio recording of the meeting is not audible because the CS left the recording device in his/her jeans. See government's Response at 2.

4

applied for and obtained court authorization directing that Verizon Wireless provide physical data location information for the cellular telephone associated with "P," so that the agents could track the location of that telephone.

On March 19, 2013, "P" contacted the CS and indicated that he would travel to Pittsburgh the next day on the Greyhound bus to provide the CS with heroin. The data location information confirmed that the cellular telephone associated with "P" traveled from New Jersey to Pittsburgh and arrived at approximately 6:00 a.m. on March 20, 2013.

Agent Cobb observed the individual known as "P"exit a Greyhound bus carrying a brown duffle bag with gray straps. "P", who was identified as defendant, and the duffle bag were detained while Agent Cobb applied for a warrant to search the duffle bag. Based on the foregoing information, Agent Cobb averred that there was "probable cause to believe that Peter Woodley, who is also known as Darren Brown, agreed to supply a substantial quantity of heroin to [the CS], and that Woodley traveled from the New Jersey area to the Pittsburgh area on March 20, 2013 for the purpose of delivering heroin to [the CS]."

On March 20, 2013, Magistrate Judge Kelly authorized the execution of a warrant to search the duffle bag. The agents' search of the bag uncovered heroin, and defendant was arrested.

### III. Motion for a Franks Hearing (Document No. 65)

Defendant argues that he is entitled to a Franks hearing because statements contained in paragraphs 2, 8 and 9 of Sergeant Bouye's Affidavit were deliberately false and/or made with reckless disregard for the truth. See defendant's Motion, ¶¶7-16. Defendant contends that when the alleged false statements are excised from Sergeant Bouye's Affidavit, the court order which

AO 72
(Rev. 8/82)

authorized Verizon Wireless to disclose the physical data location of the cellular telephone associated with defendant was not supported by probable cause. Accordingly, defendant asserts that all evidence subsequently seized from him was obtained in violation of the Fourth Amendment and should be suppressed as fruit of the poisonous tree.

The government responds that defendant is not entitled to a Franks hearing to challenge the veracity of information contained in Sergeant Bouye's Affidavit because he lacks standing in this case. According to the government, defendant does not have standing to challenge the data location information transmitted by the cellular telephone he used in connection with heroin trafficking. Even if defendant has standing, the government argues that he has failed to make the preliminary showing required by Franks to trigger his right to a hearing.

A. **Legal Standard**

The rule governing situations involving allegedly misleading search warrant affidavits was articulated by the Supreme Court in Franks v. Delaware, 438 U.S. 154 (1978). Pursuant to Franks, upon an appropriate showing, a defendant has the right to an evidentiary hearing to challenge the truthfulness of statements made in a search warrant affidavit establishing probable cause. Id. at 155-56.

To establish that a hearing is warranted, Franks requires the defendant to make a substantial preliminary showing that the affidavit contained a false statement, which was made knowingly and intentionally or with reckless disregard for the truth, and which is necessary to the finding of probable cause. Franks, 438 U.S. at 155-56, 171. In order to make the substantial preliminary showing, the defendant cannot rest on mere conclusory allegations or a "mere desire to cross-examine," but rather must specifically identify the alleged false statements or omissions in

AO 72
(Rev. 8/82)

the affidavit and present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses. Id. at 171; see also United States v. Yusef, 461 F.3d 374, 383 n.8 (3d Cir. 2006).

Statements or assertions contained in an affidavit of probable cause are "made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000) (quoting, United States v. Clapp, 46 F.3d 795, 801 n.6 (8th Cir. 1995)). Omissions from an affidavit are made with reckless disregard for the truth if an officer withholds facts that any reasonable person would know that a judge would want to know. Wilson, 212 F.3d at 788. A district court "may properly infer that an affiant acted with reckless disregard for the truth where his affidavit contains an averment that was without sufficient basis at the time he drafted it." United States v. Brown, 631 F.3d 638, 649 (3d Cir. 2011). However, when attempting to demonstrate that the affiant included a false statement in a warrant affidavit or omitted material from it, it is insufficient to prove that he acted with negligence or made an innocent mistake. Franks, 438 U.S. at 171; Yusef, 461 F.3d at 383.

Finally, if the requirements of the substantial preliminary showing "are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." Franks, 438 U.S. at 171-72. However, if the remaining content is insufficient, the defendant is entitled to a hearing.[4] Id. at 172. In consideration of these principles, defendant is not

---

[4]If a Franks hearing is held, and the defendant proves by a preponderance of the evidence that the false statements or omissions were made knowingly and intentionally or with a reckless disregard for the truth, and with the affidavit's false material set aside, the remaining content is insufficient (continued ...)

7

entitled to a Franks hearing in this case for the reasons which we explain below.

B. **Defendant has not established he is entitled to a *Franks* hearing**

Defendant is not entitled to a Frank hearing for two reasons. First, defendant has not established that he has standing to challenge the veracity of information contained in Sergeant Bouye's Affidavit regarding data location information transmitted by the cellular telephone associated with him. Even assuming defendant has standing, he nonetheless has failed to make the substantial preliminary showing required by Franks to obtain a hearing.

1. **Defendant lacks standing**

The Fourth Amendment right to be free from unreasonable searches and seizures is a personal right and a defendant must establish standing in order to assert that right. See United States v. Padilla, 508 U.S. 77, 81-82 (1993). It is the defendant's burden to establish standing to raise a Fourth Amendment challenge. See Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978). In order to establish standing, an individual claiming Fourth Amendment protection must "demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." Minnesota v. Carter, 525 U.S. 83, 88 (1998).

The government argues that defendant has not established that he has standing to challenge the veracity of information contained in Sergeant Bouye's Affidavit regarding the data location information transmitted by the cellular telephone in question because that telephone was not subscribed to him during the time Verizon Wireless transmitted the data location information to law enforcement.

---

to establish probable cause, then the warrant must be voided and the fruits of the search must be excluded from the trial. Franks, 438 U.S. at 156; see also United States v. Frost, 999 F.2d 737, 743 (3d Cir. 1993).

8

The court concludes that defendant has not met his burden to establish that he has standing to challenge the data location information associated with the cellular telephone in question. Defendant has not proffered any evidence that connects him to the cellular telephone as the owner, subscriber or authorized user, thus he has not shown that he had a reasonable expectation of privacy in the records associated with the cellular telephone, including data location information transmitted by it. See United States v. Skinner, 690 F.3d 772, 777 (6th Cir. 2012) (holding that the defendant did not have a reasonable expectation of privacy in location data broadcast from his cellular phone); In re Smartphone Geolocation Data Application, 977 F.Supp.2d 129, 147 (E.D.N.Y. 2013) (holding that cell phone users who fail to turn off their devices do not have a reasonable expectation of privacy regarding prospective geolocation data and such expectation would not be reasonable in any event); United States v. Barrera-Barron, 2013 WL 3989182, at *4 (D. Kan. Aug. 1, 2013) (the defendant did not have a reasonable expectation of privacy in the GPS data from the cellular telephone that was used to track his whereabouts, thus he lacked standing to contest the use of that data); United States v. Wilson, 2013 WL 1129199, at *4 (N.D. Ga. Feb. 20, 2013) (the defendant lacked standing to challenge the government's acquisition of historical cell site records where he failed to establish that he was the owner, subscriber or authorized user of the cellular phone).

Although we conclude defendant has not established that he has standing to challenge the acquisition of the data location information associated with the cellular telephone in question, we nevertheless will address his claim that he is entitled to a Franks hearing.

AO 72
(Rev. 8/82)

### 2. Even assuming, *arguendo*, that defendant has standing, he has not made the substantial preliminary showing required by *Franks* to obtain a hearing

Even assuming, *arguendo*, that defendant has standing to challenge the acquisition of the data location information associated with the cellular telephone in question, he has not made the requisite substantial preliminary showing necessary to obtain a Franks hearing. As previously discussed, in order to obtain a Franks hearing, the defendant must make a substantial preliminary showing that the affidavit contained a false statement, which was made knowingly and intentionally or with reckless disregard for the truth, and which is necessary to the finding of probable cause. Franks, 438 U.S. at 155-56, 171. To make the substantial preliminary showing, the defendant must specifically identify the alleged false statements or omissions in the affidavit and present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses. Id. at 171.

The court notes that while defendant has identified certain statements in paragraphs 2, 8 and 9 of Sergeant Bouye's Affidavit that he contends are false, he has not submitted any sworn affidavits or similar material to contradict Sergeant Bouye's Affidavit, nor has he otherwise presented any evidence to establish that Sergeant Bouye made false statements knowingly and intentionally or with reckless disregard for the truth. See Franks, 438 U.S. at 171; Yusef, 461 F.3d at 383, n.8.

First, with regard to paragraph 2, defendant claims that Sergeant Bouye made false statements concerning the various investigative techniques, undercover controlled meetings and consensually recorded phone calls which were mentioned. In support of his assertion that paragraph 2 of Sergeant Bouye's Affidavit contains false information, defendant attached to his

AO 72
(Rev. 8/82)

Motion a transcript of a March 6, 2013, recorded conversation between himself and the CS, which he suggests is inconsistent with Sergeant Bouye's statements in paragraph 2.

Defendant has failed to explain how the transcript of the March 6, 2013, recorded conversation shows that the statements contained in paragraph 2 of Sergeant Bouye's Affidavit were false or made with reckless disregard for the truth. Paragraph 2 states, in relevant part, "[b]ased on the investigation, which included various investigative techniques, undercover controlled meetings, consensually recorded phone calls to this subject telephone, and CS testimony, "P" is anticipated to deliver large quantities of heroin to Pittsburgh, PA in the near future." The transcript of the March 6, 2013, recorded conversation between defendant and the CS indicates that the CS would get dropped off at the Greyhound station where defendant was waiting and they then would walk to McDonald's to meet. The transcript of the recorded conversation does not demonstrate that Sergeant Bouye made false statements in paragraph 2. To the contrary, the transcript supports Sergeant Bouye's statement that the investigation relied, in part, upon recorded telephone calls between the CS and defendant.

Next, defendant contends that paragraph 8 contains false statements concerning the discussion of heroin transactions. According to paragraph 8 of Sergeant Bouye's Affidavit, on March 5, 2013, the CS received an e-mail message from an unwitting female advising him/her that "P" "wanted to contact the CS in order to conduct business, or purchase heroin. This female then provided the CS with the subject telephone. The CS advised that he/she had spoken to "P" on the subject telephone on this date to arrange for a meeting to discuss future heroin transactions."

According to defendant, an e-mail message dated March 5, 2013, between the CS and an

11

unidentified female, a copy of which is attached to defendant's Motion,[5] shows that no heroin transactions were discussed. While the e-mail/text message exchange does not specifically reference heroin, the female stated "[w]hats good u don't fuck wit. Jerz no mo thought we was better than that," explained to the CS-1 "[t]hat was ya man P" and told the CS to text her and she would give P's number to the CS. According to the government, based on information provided by the CS, Sergeant Bouye interpreted this exchange to indicate "P's" desire to contact the CS regarding heroin transactions.

Although the e-mail/text message exchange does not specifically use the word heroin, it does not establish that Sergeant Bouye's statements in paragraph 8 were false or made with reckless disregard for the truth. Drug transactions are oftentimes discussed in coded language, thus it was reasonable for Sergeant Bouye to interpret the e-mail/text message exchange in the manner set forth in paragraph 8, especially since he explained that the CS "is currently charged federally with participating in a heroin distribution conspiracy and is cooperating in hopes of reducing his/her sentence." Thus, Sergeant Bouye reasonably relied on information provided by the CS, who was cooperating with law enforcement, concerning the actual meaning of the e-mail/text message exchange.

Finally, defendant asserts that paragraph 9 of Sergeant Bouye's Affidavit contains false information concerning a March 6, 2013, meeting in Pittsburgh between defendant and the CS during which they discussed heroin transactions. According to defendant, a review of the audio tape of the meeting does not demonstrate that any such meeting occurred. However, the

---

[5]The government clarified in its Response at page 7 that the e-mail message to which defendant refers actually is a text message exchange.

12

government points out that defendant failed to disclose that the audio tape is inaudible because the CS left the recording device in his/her jeans. Nonetheless, the CS reported to Sergeant Bouye what occurred at the meeting, which is set forth in paragraph 9 of the Affidavit. Other than his bald assertion of what he claims the audio tape does not show, defendant has failed to proffer any evidence to indicate the statements in paragraph 9 of Sergeant Bouye's Affidavit were knowingly false or were made with reckless disregard for the truth.

In sum, defendant has not presented any sworn affidavit or other evidence contradicting the statements contained in paragraphs 2, 8 and 9 of Sergeant Bouye's Affidavit that he claims are false. Moreover, defendant has failed to proffer any evidence to suggest that Sergeant Bouye made any of the statements defendant claims are false knowingly and intentionally or with reckless disregard for the truth. Accordingly, we find that defendant has failed to make the substantial preliminary showed required by <u>Franks</u>, thus he is not entitled to a hearing.

## IV. Conclusion

For the foregoing reasons, defendant's Pretrial Motion for a <u>Franks</u> Hearing will be denied. An appropriate order will follow.

*Gustave Diamond*
Gustave Diamond
United States District Judge

Date: July 21, 2014

AO 72
(Rev. 8/82)

cc: Brendan T. Conway
Assistant U.S. Attorney

James H. Robinson, Esq.
316 South Maple Avenue
Box 201
Greensburg, PA 15601