IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 13-113 |
| | ) | |
| PETER WOODLEY | ) | |

O P I N I O N

DIAMOND, D.J.

Presently before the court is defendant Peter Woodley's most recent pretrial motions: (1) Motion to Suppress All Evidence Discovered During Vehicle Search Occurring September 17, 2012 (Document No. 111); (2) Motion for Severance of Counts for Trial (Document No. 113); (3) Motion to Suppress All Evidence Seized from Defendant's Person on March 20, 2013 (Document No. 114); and (4) Motion for a Hearing Pursuant to Franks v. Delaware (Document No. 115). The government responded to defendant's pretrial motions. See Document Nos. 91, 92 and 123. For reasons explained below, defendant's suppression motions and motion for a Franks hearing will be denied, and his severance motion will be denied to the extent he seeks to sever Count Two of the superseding indictment (the firearm count) from the two drug counts for trial, although a bifurcated trial will be ordered.

## I.    Procedural History

On March 22, 2013, a criminal complaint was filed against defendant alleging that he violated various provisions of the Controlled Substances Act relating to the distribution of heroin. On April 16, 2013, a grand jury returned a two-count indictment against defendant charging him with conspiracy to distribute and possess with intent to distribute heroin from in and around December 2011, until in and around August 2012, in violation of 21 U.S.C. §846 and possession with intent to distribute heroin on or about March 20, 2013, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(B)(i).

Defendant's first appointed CJA counsel, Melvin Vatz, filed the following pretrial motions: (1) Motion to Suppress; (2) Motion for Discovery; (3) Motion for Disclosure of Promises of Leniency and/or Existence of Plea Bargain Agreements; (4) Motion to Dismiss; and (5) Motion for Ordering of Government's Proof or for a Separate Hearing to Determine the Existence of a Conspiracy.

Defendant became dissatisfied with Attorney Vatz's representation, and requested the appointment of new counsel. Following a hearing, the court granted defendant's request and Attorney James Brink was appointed to represent him.

After a hearing, the court denied defendant's Motion to Suppress[1] and granted in part and denied in part his other pretrial motions.  See Opinion and Order of Court dated December 30, 2013 (Document Nos. 47 and 48) (hereinafter, the "December 2013 Opinion").  The court also

---

[1] Defendant's suppression motion challenged his detention and the detention of his duffle bag on March 20, 2013, when he arrived at the Greyhound bus station in Pittsburgh.  The court ruled that even if defendant was correct that his detention was so prolonged that it constituted a *de facto* arrest, that arrest was supported by ample probable cause.  The court also ruled that the detention of defendant's duffle bag was reasonable under the circumstances.

2

scheduled trial to begin on January 27, 2014.

At a pretrial status conference held on January 23, 2014, defendant asserted that he was dissatisfied with Attorney Brink, who moved to withdraw as his counsel. The court granted Attorney Brink's motion, and rescheduled trial to begin on April 21, 2014.

On January 29, 2014, Attorney James Robinson was appointed to represent defendant. At a status conference held on April 8, 2014, Attorney Robinson indicated his intent to file a motion to continue the April 21, 2014, trial date. Defendant indicated his agreement with the request for a trial continuance, as well as his understanding that the resulting delay was caused by his request and by his desire to file additional pretrial motions that he claims were not filed by his prior counsel.

On April 14, 2014, the court granted defendant's motion to continue the trial until August 25, 2014, to give Attorney Robinson ample time to prepare defendant's case. Despite the fact that the time for filing pretrial motions had long since passed, the court permitted defendant to file any additional pretrial motions he wished to file, and he subsequently filed a Motion for a Franks Hearing.

On July 21, 2014, the court denied defendant's Franks motion, finding that he did not have standing to challenge the agent's application and affidavit regarding data location information transmitted by the cellular telephone associated with him. Even assuming defendant had standing, the court found that he failed to make the substantial preliminary showing required by Franks to obtain a hearing. See Opinion and Order of Court dated July 21, 2014 (Document Nos. 74 and 75) (hereinafter, the "July 2014 Opinion").

Prior to the court's July 2014 Opinion, the grand jury returned a three-count superseding

3

indictment against defendant on July 15, 2014, charging him with conspiracy to distribute and possess with intent to distribute heroin from in and around December 2011, until in and around August 2012, in violation of 21 U.S.C. §846 (Count One), possession of a firearm by a convicted felon on or about September 17, 2012, in violation of 18 U.S.C. §§922(g)(1) and 924(e) (Count Two), and possession with intent to distribute heroin on or about March 20, 2013, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(C) (Count Three).

Following the superseding indictment, the court granted Attorney Robinson's motion to continue the previously scheduled August 2014, trial date to allow defendant to file pretrial motions related to the new charges. On March 30, 2015, Attorney Robinson filed a motion to suppress evidence related to the firearm charge and a motion for severance of counts for trial. The government responded to these motions and a suppression hearing was scheduled on March 17, 2015.

However, on February 24, 2015, defendant filed a pro se motion for appointment of new counsel. After a hearing, the court entered an order on March 12, 2015, denying defendant's request because he had not established good cause for replacing court-appointed counsel. Defendant was directed to set forth in writing and provide the specific requests he had of Attorney Robinson with respect to the handling of his case by April 13, 2015. As a result of this development, the court granted Attorney Robinson's motion to continue the suppression hearing until May 20, 2015.

Despite defendant's claim of indigence which entitled him to three court-appointed counsel, Attorney William Norman entered his appearance on April 13, 2015, as retained counsel for defendant, and Attorney Robinson was granted leave to withdraw from the case.

4

Attorney Norman then moved to continue the suppression hearing scheduled on May 20, 2015. The court granted defendant's motion and rescheduled the suppression hearing on July 15, 2015. Defendant also was ordered to file all pretrial motions he wished to file by June 8, 2015. Defendant then filed the pending pretrial motions, and the government responded. After reviewing the parties' respective submissions, the court determined that a hearing was necessary only with respect to defendant's motion to suppress evidence related to the vehicle search, which was held on July 15, 2015.

II.     **Motion to Suppress All Evidence Discovered During Vehicle Search Occurring September 17, 2012 (Document No. 111)**

Defendant argues that the evidence discovered during a vehicle search which occurred on September 17, 2012, should be suppressed because it was obtained in violation of the Fourth Amendment. Defendant argues that *prior* to obtaining the rental company representative's consent to search the vehicle, the police violated the Fourth Amendment. According to defendant, Pennsylvania State Trooper Eric Maurer approached him in the role of a "community caretaker," but acted beyond the permissible scope of that role by ordering defendant to produce identification without reasonable suspicion that he had committed any offense or without any public safety concern. Defendant claims that Trooper Maurer unlawfully seized him when he asked for his identification, which ultimately led to discovery of the firearm charged in the superseding indictment. Defendant contends the firearm should be suppressed as fruit of the poisonous tree.

A.     **Background Regarding Events of September 17, 2012**

Trooper Maurer testified at the suppression hearing concerning the events of September 17, 2012, and he also completed an incident report relating to that matter, a copy of which is attached

5

as Exhibit C to the government's Omnibus Response to Defendant's Pretrial Motions (Document No. 123) (hereinafter, the "government's Omnibus Response"). On that date, while on patrol in a marked vehicle on State Route 28, Trooper Maurer observed a vehicle parked on the berm of the highway with its hazard signals activated. Trooper Maurer stopped behind the vehicle to check on the safety of the occupant, who eventually was identified as defendant. Defendant, who was seated in the driver's seat, informed Trooper Maurer that he had run out of gas and that he was on the phone with his girlfriend who was in the area. Consistent with his practice in such situations, Trooper Maurer asked defendant for his identification, as well as identification for the vehicle. Defendant stated that he had no identification on him, but provided his name as Darren Brown and said that he was from New Jersey. Defendant also provided an expired rental agreement, which did not list him as a driver, and an insurance card for a vehicle belonging to Nicole Eakin.

Trooper Maurer returned to his patrol car to check the information defendant provided and discovered the vehicle was a rental owned by Leeway Rental. In addition, Trooper Maurer ran a check for Darren Brown, but found no information for any such individual in Pennsylvania or New Jersey.

Trooper Maurer then returned to the rental vehicle, informed defendant that no information existed for Darren Brown and asked him to exit the vehicle because Trooper Maurer could not confirm his identity and he was not authorized to operate the rental vehicle. Defendant complied and consented to a search of his person, which revealed $700 in cash. While speaking with defendant, two females arrived, and one identified herself as Nicole Eakin. Eakin indicated she knew the rental vehicle was overdue, but she let defendant drive it.

Subsequently, a representative from Leeway Rental arrived on the scene to retrieve the

6

vehicle and gave consent to search it. Eakin stated that she did not have any personal property in the vehicle and defendant claimed only to have compact discs in it. A search of the vehicle revealed a duffle bag in the trunk which contained a loaded pistol with a partially obliterated serial number, $1000 in cash, clothing and personal items.

Defendant was informed that he was under arrest and he was transported to the State Police Barracks. While entering evidence, the police found a piece of paper in the duffle bag with a receipt from the Plainfield, New Jersey Police issued to Peter Woodley for currency seized during an investigation. Trooper Maurer searched the name "Woodley," contacted the Plainfield Police and ultimately identified defendant as Woodley, not Darren Brown.

### B.     Defendant Lacks Standing to Challenge the Vehicle Search

Defendant, apparently recognizing the insurmountable hurdle he faces because (1) he was not authorized to drive the rental vehicle and thus lacks standing to challenge the vehicle search and (2) the rental company representative consented to a search of it, argues that a Fourth Amendment violation occurred *before* it was discovered he was an unauthorized driver and *before* consent was obtained. Defendant's position is without merit.

As an initial matter, the Fourth Amendment right to be free from unreasonable searches and seizures is a personal right and a defendant must establish standing in order to assert that right. See United States v. Padilla, 508 U.S. 77, 81-82 (1993). It is the defendant's burden to establish standing to raise a Fourth Amendment challenge. See Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978). In order to establish standing, an individual claiming Fourth Amendment protection must "demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." Minnesota v. Carter, 525 U.S. 83, 88 (1998).

AO 72
(Rev. 8/82)

The Third Circuit has held that "the driver of a rental car who has been lent the car by the renter, but who is not listed on the rental agreement as an authorized driver, lacks a legitimate expectation of privacy in the car unless there exist extraordinary circumstances suggesting an expectation of privacy." United States v. Kennedy, 638 F.3d 159, 165 (3d Cir. 2011). Although the defendant in Kennedy had the renter's permission to operate the vehicle, he did not have the permission of the owner rental company, thus he lacked standing to contest the search of the rental vehicle. Id. at 168. Further, no extraordinary circumstances suggesting a legitimate expectation of privacy were present in Kennedy because the defendant "was simply granted permission by the renter of the vehicle." Id. (citation omitted).

Like the defendant in Kennedy, defendant in this case only had been given permission by Eakin as renter, not Leeway Rental as owner, to operate the vehicle, thus no extraordinary circumstances are present, and he lacks standing to challenge the search of the rental vehicle. Defendant concedes that Kennedy is binding precedent, but he believes the decision is erroneous and raises the issue to preserve it for future appellate review.

Although defendant lacks standing to contest the search of the rental vehicle, and despite the fact that a representative of Leeway Rental consented to a search, defendant maintains that he may challenge the search of the duffle bag found in the trunk. Defendant is incorrect.

The Supreme Court has held that "the Fourth Amendment does not compel separate treatment for an automobile search that extends only to a container within the vehicle." California v. Acevedo, 500 U.S. 565, 576 (1991). Rather, "closed containers in cars [can] be searched without a warrant because of their presence within the automobile . . . [and] the privacy interest in those closed containers yield[s] to the broad scope of an automobile search." Id. at 572 (citing United

8

States v. Ross, 456 U.S. 798 (1982)); see also United States v. Wellons, 32 F.3d 117, 119 (4th Cir. 1994) (holding that "[o]ne who can assert no legitimate claim to the car he was driving cannot reasonably assert an expectation of privacy in a bag found in that automobile"). Additionally, a defendant who fails to alert the police to his ownership interest in a bag within the vehicle that is searched ultimately does not retain an expectation of privacy. See United States v. Anderson, 859 F.2d 1171, 1177 (3d Cir. 1988); United States v. Valle-Irizarry, 2014 WL 3673139, *6 (D.N.J. July 22, 2014) (finding that the defendant did not maintain an expectation of privacy in a camera bag located during the search of a vehicle where the defendant failed to furnish any evidence that expressed his ownership of the bag either before or during the vehicle search).[2]

Based on this authority, defendant did not maintain an expectation of privacy in the duffle bag found in the trunk of the rental car. As an unauthorized driver of the rental vehicle, defendant had no reasonable expectation of privacy in the vehicle or its contents. Furthermore, after the Leeway Rental representative consented to a search of the vehicle, defendant claimed that he only had compact discs in the car, not a duffle bag, thus he failed to assert any expectation of privacy in the bag. For these reasons, the search of the duffle bag did not violate the Fourth Amendment.

---

[2]Defendant contends that he has standing to challenge the search of the duffle bag under state law principles because the search was conducted by a Pennsylvania state trooper and Pennsylvania law confers automatic standing in this instance. Defendant's argument is without merit. Defendant is charged in federal court with violation of a federal firearms statute, thus federal law applies. See Elkins v. United States, 364 U.S. 206, 223-34 (1960) ("In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed." ); see also United States v. Bedford, 519 F.2d 650, 654 (3d Cir. 1975). This binding precedent makes clear that federal law controls our analysis, despite defendant's position to the contrary, which he attempted to support by citation to United States v. Rickus, 566 F. Supp. 96 (E.D. Pa. 1983), see Document No. 118 at 12, yet failed to indicate that case subsequently was reversed. See United States v. Rickus, 737 F.2d 360, 363 (3d Cir. 1984) (observing "[i]t is a general rule that federal district courts will decide evidence questions in federal criminal cases on the basis of federal, rather than state, law" and finding no authority for the district court's holding that an exception to this general rule exists where state agents have violated state constitutional, as opposed to state statutory, law).

AO 72
(Rev. 8/82)

## C.    Defendant Was Not Unlawfully Seized

To circumvent the lack of standing because he was not authorized to drive the rental vehicle, as well as the Leeway Rental representative's consent to search the car, defendant argues that Trooper Maurer's *prior* actions were unlawful, thus the evidence seized should be suppressed in any event. Once again, defendant is incorrect.

Defendant claims that Trooper Maurer initially approached him in the role as a "community caretaker"[3] to check on defendant's safety when he observed the vehicle on the berm of the highway with its hazard signals activated. According to defendant, when he indicated he did not need assistance, Trooper Maurer should have ceased the interaction, but instead asked for identification, which constituted an unlawful seizure. Defendant argues that any evidence subsequently discovered should be suppressed as fruit of the poisonous tree.

Contrary to defendant's position, the Supreme Court has held that even when the police have no basis for suspecting an individual, they may generally ask him questions and ask to examine his identification, as long as the police do not convey a message that compliance is required. See Florida v. Bostick, 501 U.S. 429, 435 (1991). This type of interaction does not constitute a seizure. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Id. at 434.

---

[3] "In performing [the] community caretaking role, police are expected to aid those in distress, combat actual hazards, prevent potential hazards from materializing and provide an infinite variety of services to preserve and protect public safety." United States v. Smith, 522 F.3d 305, 313 (3d Cir. 2008) (quoting United States v. Coccia, 446 F.3d 233, 238 (1st Cir. 2006)). The community caretaking function is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Cady v. Dombrowski, 413 U.S. 433, 441 (1973).

AO 72
(Rev. 8/82)

The Supreme Court has held that a seizure occurs when the police apply physical force to restrain a person or, absent force, the person seized submits to police authority. California v. Hodari D., 499 U.S. 621, 626-28 (1991); see also, United States v. Mendenhall, 446 U.S. 544, 553 (1980) (stating that "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained"). Whether the police make a show of authority is an objective test: "not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." Hodari, 499 U.S. at 628. Examples of situations that might indicate a seizure include the threatening presence of several officers, the fact that an officer displayed a weapon, some physical touching of the individual or the use of a tone of voice or language to signify that compliance with the officer's request is required. Mendenhall, 446 U.S. at 554.

On the facts present here, defendant was not unlawfully seized. Trooper Maurer initially approached defendant by himself, he did not display a weapon or touch defendant and there is no evidence to indicate that the trooper used a threatening tone of voice or language. Trooper Maurer credibly testified (and his police report also indicates) that he *asked* defendant for identification. There is no indication that Trooper Maurer restrained defendant by means of physical force or a show of authority, thus defendant was not unlawfully seized and suppression of the subsequently discovered evidence is not warranted. See United States v. Carpenter, 462 F.3d 981, 985 (8th Cir. 2006) (finding that an officer's request for identification, and brief retention of those documents, did not constitute a seizure where there was no message of compulsion present in the record).

11

**III.   Motion for a Hearing Pursuant to Franks v. Delaware (Document No. 115)**

At issue in defendant's Motion for a _Franks_ Hearing is an Application and Affidavit dated March 11, 2013, for Disclosure of Location Data Relating to a Wireless Telephone, which was completed by Narcotics Sergeant Christopher Bouye of the New Castle City Police Department and Task Force Officer with the Drug Enforcement Administration ("DEA"), a copy of which is attached as Exhibit A to the government's Omnibus Response (hereinafter, the "Bouye Affidavit"). Information contained in the Bouye Affidavit was incorporated into the Affidavit in Support of Application for Search Warrant prepared by DEA Special Agent Melissa Cobb (hereinafter, the "Cobb Affidavit"), which is attached as Exhibit B to the government's Omnibus Response.

Defendant argues that he is entitled to a _Franks_ hearing because both the Bouye Affidavit and the Cobb Affidavit contained material misrepresentations or omissions. _See_ defendant's Memorandum of Points and Authorities in Support of Application for Order of Suppression (Document No. 120), at 6-7, 12-13. According to defendant, law enforcement unlawfully obtained data location information for the cellular telephone associated with him, which enabled them to track his location and ultimately locate, seize and detain him and his duffle bag that contained heroin.

Contrary to defendant's position, no _Franks_ hearing is required. This court previously ruled that defendant lacks standing to challenge the Bouye Affidavit regarding data location information transmitted from the cellular telephone in question, but even if he had standing, he failed to make the substantial preliminary showing required by _Franks_ to obtain a hearing. _See generally,_ July 2014 Opinion. Although repetitive, we will repeat our discussion and ruling on the matter, as well as address defendant's argument based on the affidavit he submitted.

12

## A.    Background Regarding Events of March 20, 2013

The Bouye Affidavit and the Cobb Affidavit set forth the following information. The DEA, along with local law enforcement agencies, conducted an investigation of a heroin trafficking organization involving an individual known as "P", who was later identified as defendant. In connection with the investigation, the DEA utilized a confidential source ("CS") who had been involved in the organization. The CS is federally charged with participating in the heroin distribution conspiracy, and is cooperating with the government with the hope of reducing his or her sentence.

On March 5, 2013, the CS received an e-mail message from a female who advised that "P" wanted to contact the CS. The female provided the CS with P's telephone number, and the CS spoke with "P" to arrange a meeting to discuss future heroin transactions.

On March 6, 2013, the CS placed a consensually recorded phone call to "P" and arranged to meet him in Pittsburgh. On that day, while under constant surveillance by law enforcement agents, the CS met with "P" and discussed future heroin transactions. The CS told the agents that "P" is from New Jersey and travels to Pittsburgh by Greyhound bus to transport hundreds of bricks of heroin.[4] According to the CS, he/she had purchased heroin from "P" in the past and "P's" mode of travel had been consistent.

During the controlled meeting that occurred, "P" advised the CS that he would return to Pittsburgh with several hundred bricks of heroin at the end of the next week. "P" agreed to provide the CS with approximately 100 bricks of heroin when he returned to Pittsburgh. The CS

---

[4] According to the government, the meeting was recorded, but the recording is of poor quality because of the way the CS handled the recording device. See government's Omnibus Response at 10.

understood that "P" would travel to Pittsburgh by Greyhound bus as he had done in the past.

Based on the foregoing information, on March 11, 2013, Sergeant Bouye applied for and obtained court authorization directing Verizon Wireless to provide physical data location information for the cellular telephone associated with "P," so that the agents could track the location of that telephone.

On March 19, 2013, "P" contacted the CS and indicated that he would travel to Pittsburgh the next day on the Greyhound bus to provide the CS with heroin. The data location information confirmed that the cellular telephone associated with "P" traveled from New Jersey to Pittsburgh and arrived at approximately 6:00 a.m. on March 20, 2013.

Agent Cobb observed the individual known as "P"exit a Greyhound bus carrying a duffle bag. "P", who was identified as defendant, and the duffle bag were detained while Agent Cobb applied for a warrant to search the duffle bag, which was authorized by a magistrate judge. The agents' search of the bag uncovered heroin, and defendant was arrested.

B.    **Legal Standard**

The rule governing situations involving allegedly misleading search warrant affidavits was articulated by the Supreme Court in Franks v. Delaware, 438 U.S. 154 (1978). Pursuant to Franks, upon an appropriate showing, a defendant has the right to an evidentiary hearing to challenge the truthfulness of statements made in a search warrant affidavit establishing probable cause. Id. at 155-56.

To establish that a hearing is warranted, Franks requires the defendant to make a substantial preliminary showing that the affidavit contained a false statement, which was made knowingly and intentionally or with reckless disregard for the truth, and which is necessary to the finding of

14

probable cause. Franks, 438 U.S. at 155-56, 171. In order to make the substantial preliminary showing, the defendant cannot rest on mere conclusory allegations or a "mere desire to cross-examine," but rather must specifically identify the alleged false statements or omissions in the affidavit and present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses. Id. at 171; see also United States v. Yusef, 461 F.3d 374, 383 n.8 (3d Cir. 2006).

Statements or assertions contained in an affidavit of probable cause are "made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000) (quoting, United States v. Clapp, 46 F.3d 795, 801 n.6 (8th Cir. 1995)). Omissions from an affidavit are made with reckless disregard for the truth if an officer withholds facts that any reasonable person would know that a judge would want to know. Wilson, 212 F.3d at 788. A district court "may properly infer that an affiant acted with reckless disregard for the truth where his affidavit contains an averment that was without sufficient basis at the time he drafted it." United States v. Brown, 631 F.3d 638, 649 (3d Cir. 2011). However, when attempting to demonstrate that the affiant included a false statement in a warrant affidavit or omitted material from it, it is insufficient to prove that he acted with negligence or made an innocent mistake. Franks, 438 U.S. at 171; Yusef, 461 F.3d at 383.

Finally, if the requirements of the substantial preliminary showing "are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." Franks, 438 U.S. at 171-72. However, if the remaining content is insufficient, the

15

defendant is entitled to a hearing.[5] Id. at 172. In consideration of these principles, defendant is not entitled to a Franks hearing in this case for the reasons which we explain below.

## C.     Defendant has not established he is entitled to a *Franks* hearing

Defendant is not entitled to a Franks hearing.  First, defendant has not established that he has standing to challenge the Bouye Affidavit regarding the acquisition of data location information transmitted from the cellular telephone associated with him.  Furthermore, defendant has failed to make the substantial preliminary showing required by Franks to obtain a hearing regarding information contained in the Bouye Affidavit or the Cobb Affidavit.

### 1.     Defendant lacks standing to challenge the acquisition of data location information transmitted from the cell phone associated with him

As the court previously ruled in the July 2014 Opinion, defendant has not established that he has standing to challenge the data location information associated with the cellular telephone in question.  Defendant has not proffered any evidence that connects him to the cell phone as the owner, subscriber or authorized user, thus he has not shown that he had a reasonable expectation of privacy in the records associated with the cell phone, including data location information transmitted from it.[6]  Even if defendant could do so, numerous federal courts have held that one

---

[5]If a Franks hearing is held, and the defendant proves by a preponderance of the evidence that the false statements or omissions were made knowingly and intentionally or with a reckless disregard for the truth, and with the affidavit's false material set aside, the remaining content is insufficient to establish probable cause, then the warrant must be voided and the fruits of the search must be excluded from the trial. Franks, 438 U.S. at 156; see also United States v. Frost, 999 F.2d 737, 743 (3d Cir. 1993).

[6]Defendant has submitted an affidavit in which he avers that he turned off the cell phone when he traveled from New Jersey to Pittsburgh by Greyhound bus on March 20, 2013. See Affidavit of Peter Woodley, ¶3 (attached as an Exhibit to Document No. 120) (hereinafter, "defendant's Affidavit").  Defendant's Affidavit does not allege that he was the owner or authorized subscriber/user of the phone, but he subsequently claimed in his reply brief that the phone was a prepaid cellular phone which did not require him to subscribe to it in his name, thus his possession of the phone is sufficient to establish standing.  See defendant's Reply to Government's Omnibus Response to Pretrial Motions (Document No. 124) at 5.  Regardless of whether the phone was a prepaid cellular phone, the weight of authority cited in this section indicates that one does not have a reasonable expectation of privacy in location data transmitted from a cell phone.

does not have a reasonable expectation of privacy in location data transmitted from a cell phone. See United States v. Skinner, 690 F.3d 772, 777 (6th Cir. 2012) (holding that the defendant did not have a reasonable expectation of privacy in location data broadcast from his cell phone); In re Application of the United States for an Order for Authorization to Obtain Location Data Concerning an AT&T Cellular Telephone, 2015 WL 1842761, at *6 (N.D. Miss. Mar. 30, 2015) (holding that suspects did not have a reasonable expectation of privacy in location data transmitted from their cell phones); United States v. Lang, 2015 WL 327338, at *4 (N.D. Ill. Jan. 23, 2015) (an individual does not have a legitimate expectation of privacy in historical cell site information and thus the protections of the Fourth Amendment do not apply); In re Smartphone Geolocation Data Application, 977 F.Supp.2d 129, 147 (E.D.N.Y. 2013) (holding that cell phone users who fail to turn off their devices do not have a reasonable expectation of privacy regarding prospective geolocation data and such expectation would not be reasonable in any event); United States v. Barrera-Barron, 2013 WL 3989182, at *4 (D. Kan. Aug. 1, 2013) (the defendant did not have a reasonable expectation of privacy in the GPS data from the cell phone that was used to track his whereabouts, thus he lacked standing to contest the use of that data).

Although defendant has not established that he has a reasonable expectation of privacy regarding the data location information transmitted from the cell phone in question, we nevertheless will address his claim that he is entitled to a Franks hearing.

### 2. Defendant has not made the substantial preliminary showing required by Franks to obtain a hearing regarding information contained in the Bouye Affidavit or the Cobb Affidavit

Even assuming defendant could challenge the acquisition of the data location information transmitted from the cell phone, he has not made the requisite substantial preliminary showing

17

necessary to obtain a Franks hearing regarding information contained in the Bouye Affidavit or the Cobb Affidavit. As previously discussed, in order to obtain a Franks hearing, the defendant must make a substantial preliminary showing that the affidavit contained a false statement, which was made knowingly and intentionally or with reckless disregard for the truth, and which is necessary to the finding of probable cause. Franks, 438 U.S. at 155-56, 171. To make the substantial preliminary showing, the defendant must specifically identify the alleged false statements or omissions in the affidavit and present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses. Id. at 171.

The court notes that while defendant has identified certain statements in paragraphs 2,7, 8 and 9 of the Bouye Affidavit that he contends are false and claims that other information was omitted,[7] and further suggests that Special Agent Cobb lied by including in her Affidavit that data location information confirmed that the cell phone associated with him traveled from New Jersey to Pittsburgh on the morning of March 20, 2013, he has not submitted any material to contradict the Bouye or Cobb Affidavits. The only material defendant submitted is his own affidavit, which, as discussed below, does not contradict the Bouye or Cobb Affidavits. Defendant has not otherwise made an offer of proof or submitted any materials to establish that the Bouye Affidavit or the Cobb Affidavit contain false statements that were made knowingly and intentionally or with

---

[7]Defendant claims that the Bouye Affidavit contained the following false information: (1) that law enforcement was investigating a heroin distribution network as opposed to one possible heroin seller (¶2); (2) that law enforcement had recorded phone calls indicative of drug activity, but the calls did not contain any such language (¶2); (3) that defendant was involved in a heroin conspiracy, as opposed to a one-time, two-person transaction (¶7); and (4) that the CS received an electronic communication indicating defendant wanted to contact the CS about purchasing heroin, but the communication did not contain language related to drug activity (¶8). Defendant also claims that ¶9 of the Bouye Affidavit omitted the following information: (1) that the audio/video recording of the meeting between the CS and defendant which occurred on March 6, 2013, was of poor quality; and (2) that the content of a recorded phone call does not include reference to drug activity.

AO 72
(Rev. 8/82)

reckless disregard for the truth.[8]  See Franks, 438 U.S. at 171; Yusef, 461 F.3d at 383, n.8.

Defendant states in his Affidavit that he turned off his cell phone when he traveled by Greyhound bus from New Jersey to Pittsburgh on March 20, 2013, because he realized that it "was in need of charging and would likely be dead soon." See defendant's Affidavit, ¶¶2, 3. According to defendant, he never accessed his phone while on the bus and he never powered it back on. Id., ¶¶4, 5. Based on these assertions, defendant contends, without any explanation or supporting material, that law enforcement must have remotely powered on the cell phone in order to acquire the data location information necessary to track him.

Defendant's Affidavit relating to his cell phone, its dying battery and his claim that he turned it off does not contradict anything contained in the Bouye Affidavit that he claims is false concerning law enforcement's investigation of a heroin distribution network, the existence of recorded phone calls indicative of drug activity, defendant's involvement in a heroin conspiracy or the content of an electronic communication relating to drug activity. Further, the content of defendant's Affidavit does not bolster his contention that the Bouye Affidavit contained material omissions concerning the quality of the audio recording between the CS and defendant or the

---

[8] Equally unpersuasive is defendant's argument that the magistrate judge should not have relied on information from the CS that was contained in the Bouye Affidavit in making the probable cause determination because the CS was not established as reliable and the information was not independently corroborated. To the contrary, the Bouye Affidavit at ¶¶2 and 7 details steps law enforcement took in the investigation, including consensually recorded phone calls and undercover controlled meetings, which served to corroborate information provided by the CS. See United States v. Stearn, 597 F.3d 540, 555 (3d Cir. 2010) (observing that "[a] magistrate may issue a warrant relying primarily or in part upon the statements of a confidential informant, so long as the totality of the circumstances gives rise to probable cause" and finding that the informant's tip regarding the defendant's involvement in cocaine distribution was sufficiently corroborated by independent police investigation to permit the magistrate to credit the tip when ruling on a search warrant application). The Bouye Affidavit also specifically references corroborating information in ¶¶8 and 9, which includes an email message on March 5, 2013, to the CS from a third party indicating that defendant wanted to contact the CS, a consensually recorded call on March 6, 2013, between the CS and defendant and a meeting between the CS and defendant on that same date, which was observed by agents and recorded. Although defendant now claims the information set forth in the Bouye Affidavit concerning the email message, the recorded call and the meeting is false or incomplete, he has not submitted any material to contradict the information, thus he has failed to make the substantial preliminary showing necessary to obtain a Franks hearing.

AO 72
(Rev. 8/82)

content of a consensually recorded phone call. Finally defendant's Affidavit does not contradict the statement in the Cobb Affidavit that data location information confirmed the cell phone associated with him traveled from New Jersey to Pittsburgh on the morning of March 20, 2013. Although defendant claims he turned off the cell phone, he has not submitted any offer of proof or sworn statement indicating the government remotely powered on the phone in order to track his location, other than his own unsubstantiated assertion to that effect.

In sum, defendant's Affidavit is inadequate to establish that either Sergeant Bouye or Special Agent Cobb made false statements or omitted material in their respective Affidavit knowingly and intentionally or with reckless disregard for the truth. Accordingly, we find that defendant has failed to make the substantial preliminary showing required by Franks, thus he is not entitled to a hearing.


**IV.  Motion to Suppress All Evidence Seized from Defendant's Person on March 20, 2013 (Document No. 114)**

Defendant argues that the government unlawfully obtained data location information transmitted from the cell phone associated with him, which allowed law enforcement to track his whereabouts and ultimately seize and detain him and his duffle bag in violation of the Fourth Amendment. According to defendant, he turned off the cell phone while traveling by bus from New Jersey to Pittsburgh, thus the government must have remotely powered on the cell phone to acquire the data location information necessary to track him, which was an illegal trespass. Without that information, defendant argues law enforcement did not have probable cause to arrest him, thus the heroin seized from his duffle bag after his arrest should be suppressed.

Defendant provides no explanation or evidentiary support for the bald assertion that the

AO 72
(Rev. 8/82)

government somehow remotely powered on the cell phone associated with him to track his whereabouts. Even assuming the government could remotely power on the cell phone as defendant claims, he fails to explain how authorities could have obtained data location information from the cell phone if it "was in need of charging and would likely be dead soon" as he claims in his Affidavit. Defendant's argument on this point is illogical.

As the court explained in the December 2013 Opinion, law enforcement had ample probable cause to arrest defendant when he exited the Greyhound bus. To repeat, the agents had obtained information from the CS that defendant previously had traveled from New Jersey to Pittsburgh by Greyhound bus to transport heroin. While under surveillance by law enforcement agents, the CS met with defendant on March 6, 2013, to discuss future heroin transactions and defendant agreed to provide the CS with heroin when he returned to Pittsburgh. On March 19, 2013, defendant contacted the CS to advise that he would be traveling to Pittsburgh by Greyhound bus the next day with heroin. Data location information showed that the cell phone associated with defendant traveled from New Jersey to Pittsburgh on March 20, 2013, and arrived at the Greyhound bus station at 6:00 a.m. that day. The agents then observed defendant exit a Greyhound bus while carrying a duffle bag.

Under these circumstances, probable cause existed to arrest defendant. If the agents had immediately arrested defendant, they would have been permitted to conduct a search of his duffle bag incident to his arrest. See United States v. Shakir, 616 F.3d 315, 321 (3d Cir. 2010) (holding that a search incident to an arrest is permissible when "there remains a reasonable possibility" that the arrestee could destroy evidence or access a weapon in the container or area being searched). Instead of immediately placing defendant under arrest and searching the duffle bag, however, the

21

agents detained him while they obtained a search warrant for the bag. As the court previously ruled

in the December 2013 Opinion, even if defendant was correct that his detention was so prolonged

that it constituted a *de facto* arrest, that arrest was supported by ample probable cause, and the

detention of his duffle bag while Agent Cobb obtained a search warrant was reasonable under the

circumstances because law enforcement acted diligently to pursue their investigation.[9]

Accordingly, there was no Fourth Amendment violation and defendant's motion to suppress will

be denied.


## V.   **Motion for Severance of Counts for Trial** (Document No. 113)

Defendant has moved to sever Count Two of the superseding indictment, which charges

him with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §922(g)(1), from

the trial of Counts One and Three, which charge him with conspiracy to distribute and possession

---

[9]As stated, the court ruled in the December 2013 Opinion that the detention of defendant's duffle bag while the agent obtained a search warrant was reasonable under the circumstances because law enforcement acted diligently to pursue their investigation. Despite that ruling, defendant now argues that law enforcement should have obtained an anticipatory search warrant because it would have minimized the amount of time defendant and his duffle bag were detained. Because an anticipatory search warrant was not obtained, defendant maintains that the detention was unnecessarily prolonged, thus the heroin should be suppressed. Defendant is incorrect.

An anticipatory search warrant is "a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." United States v. Grubbs, 547 U.S. 90, 94 (2006). Two prerequisites of probability must be satisfied for a conditioned anticipatory search warrant to comply with the Fourth Amendment's requirement of probable cause. See United States v. Golson, 743 F.3d 44, 54 (3d Cir. 2014) (citing Grubbs, 547 U.S. at 96-97). First, based on facts that exist when the warrant is issued, there must be probable cause to believe that contraband, which is not yet present at the place to be searched, will be there when the warrant is executed. Grubbs, 547 U.S. at 96-97. For this requirement to be satisfied, "there must be a sufficient nexus between the contraband to be seized and the place to be searched . . . ." United States v. Loy, 191 F.3d 360, 365 (3d Cir. 1999). Second, there must be probable cause to believe that the triggering event will actually occur. Grubbs, 547 U.S. at 97.

In this case, it would have been impossible for the agent to apply for an anticipatory search warrant. While law enforcement had information from the CS that defendant would be traveling from New Jersey to Pittsburgh by Greyhound bus on March 20, 2013, carrying heroin, they had no information concerning the type of container defendant would use to transport the heroin, i.e, whether he would carry a suitcase, a duffle or tote bag or another type of container. Thus, the agent could not have applied for an anticipatory search warrant because she would have been unable to describe in the supporting affidavit the item or place to be searched when defendant arrived in Pittsburgh.

with intent to distribute heroin. According to defendant, separate trials are warranted on the drug counts and the firearm count under Federal Rule of Criminal Procedure 14(a) because joinder of the offenses is prejudicial to him. The government responds that all counts of the superseding indictment are properly joined and defendant will not be prejudiced if they are tried together, thus his severance motion should be denied. For the following reasons, the court will deny defendant's motion to the extent he seeks to sever Count Two of the superseding indictment from the other two counts for trial, but a bifurcated trial will be ordered.

Rule 8(a) provides that an indictment may charge a defendant in separate counts with two or more offenses if the offenses charged: (1) are of the same or similar character; or (2) are based on the same act or transaction; or (3) are connected with or constitute parts of a common scheme or plan. A defendant who claims improper joinder under Rule 8(a) must prove actual prejudice from the misjoinder. United States v. Gorecki, 813 F.2d 40, 42 (3d Cir. 1987).

Defendant does not contend that Counts One and Three of the superseding indictment, which relate to his alleged participation in a conspiracy to distribute heroin and possession with intent to distribute heroin, are improperly joined. However, without specifically referencing Rule 8(a), defendant maintains that the firearm charge is improperly joined with the drug charges, claiming that they "have no logical connection with one another . . . " and "[t]here is no conceivable nexus between the charged courses of conduct . . . ." See defendant's Brief in Support of Motion for Bifurcation of Counts for Trial[10] (Document No. 117) at 1, 2. To the extent that

---

[10] We note that defendant's motion is entitled as one for severance of counts, but his brief is entitled as one in support of bifurcation of counts. Compare Document No. 113 with Document No. 117. Defendant refers to both bifurcation and severance in his brief. See Document No. 117 at 2 (stating that the court should grant his request for bifurcation) and at 5 (stating that severance is due). To the extent defendant's request is for severance, his motion is denied as we explain herein, although we will order a bifurcated trial procedure.

AO 72
(Rev. 8/82)

defendant argues joinder is improper, he is incorrect. To the contrary, all counts of the superseding indictment are properly joined because they constitute parts of a common scheme.

Count One charges that defendant participated in a heroin distribution conspiracy from in and around December 2011 until in and around August 2012. According to the government, defendant dealt with the CS during that time, which was prior to the CS's cooperation with the government. Count Two charges that defendant, who is a convicted felon, illegally possessed a firearm on or about September 17, 2012. That charge stems from defendant's arrest in the Pittsburgh area following the incident where he was the unauthorized driver of a rental car in which a stolen firearm was located in a duffle bag. According to the government, defendant's presence in the Pittsburgh area at that time is evidence of his connection to the heroin conspiracy, and the CS will testify that the conspiracy ended because of defendant's incarceration on another charge. Count Three then charges defendant with possession with intent to deliver heroin on March 20, 2013, which is the day after he told the CS that he would travel to Pittsburgh the next day to deliver heroin. All counts of the superseding indictment relate to a common scheme involving defendant's alleged heroin trafficking in the Western District of Pennsylvania. Accordingly, it is not an appropriate use of judicial resources to sever Count Two from Counts One and Three.

Federal Rule of Criminal Procedure 14, which deals with relief from prejudicial joinder, only comes into play after it first has been determined that joinder was permissible under Rule 8(a). United States v. Graci, 504 F.2d 411, 413 (3d Cir. 1974). According to Rule 14(a), if the joinder of offenses in an indictment appears to prejudice a defendant, the court may order separate trials of counts. A motion for severance under Rule 14 rests in the sound discretion of the district court. United States v. Reicherter, 647 F.2d 397, 400 (3d Cir. 1981). One who claims improper joinder

24

AO 72
(Rev. 8/82)

under Rule 14 must demonstrate clear and substantial prejudice. Id. Mere allegations of prejudice are not enough, and it is insufficient to establish that severance would improve the defendant's chance of acquittal. Id.

Defendant generally claims that he will be prejudiced by joinder of the firearm count with the drug counts. See defendant's Motion for Severance of Counts for Trial (Document No. 113) (stating that "severance is needed to protect [defendant] from the prejudice that can result from trying a felon in possession charge with other unrelated felony charges"). However, defendant fails to allege, let alone pinpoint, clear and substantial prejudice sufficient to justify severance under Rule 14. Thus, defendant's motion will be denied to the extent he seeks to sever Count Two of the superseding indictment from the trial of Counts One and Three. However, the court finds that a bifurcated trial procedure is appropriate in this case.

The Third Circuit Court of Appeals has held that bifurcation may be appropriate to address the concern that introducing evidence of a defendant's criminal record in order to prove a felon in possession charge would prejudice him during the jury's deliberation on the other counts. See United States v. Joshua, 976 F.2d 844, 848 (3d Cir. 1992) (abrogated on other grounds by Stinson v. United States, 508 U.S. 36 (1993)); see also, United States v. Williams, 504 Fed. Appx. 207, 212-13 (3d Cir. 2012) (approving district court's use of bifurcated trial procedure for conspiracy to distribute narcotics and possession of a firearm by a convicted felon); United States v. McCode, 317 Fed. Appx. 207, 212 (3d Cir. 2009) (approving bifurcation of felon in possession counts from robbery related counts).

In Joshua, the defendant was charged with armed bank robbery, weapons charges in connection with the bank robbery and possession of a firearm by a convicted felon. The defendant

AO 72
(Rev. 8/82)

moved to sever the felon in possession count from the remaining counts for trial, fearing that the evidence of his prior criminal conviction might unfairly influence the jury's decision on the other counts. The district court denied the defendant's motion to sever, but ordered a bifurcated trial during which the jury first heard evidence and deliberated concerning the robbery-related counts, and then heard evidence of the defendant's criminal record and deliberated concerning the felon in possession count. The Third Circuit determined that this procedure employed by the district court "strikes an appropriate balance between the concern about prejudice to the defendant and considerations of judicial economy." Joshua, 976 F.2d at 848.

As in Joshua, bifurcation is appropriate here. Evidence of defendant's prior felony convictions, which is admissible at Count Two, may be prejudicial to defendant in the trial of Counts One and Three. In addition, the elements of Counts One and Three involving the drug charges are distinct from those that must be proved by the government in connection with the felon in possession charge at Count Two. For these reasons, we find it appropriate to bifurcate the trial such that the jury first will hear evidence related to Counts One and Three of the superseding indictment and, after reaching a verdict on those counts, will thereafter hear evidence concerning Count Two. This bifurcated trial procedure will balance the interest of judicial economy with any potential prejudice to defendant.

AO 72
(Rev. 8/82)

## VI. Conclusion

For the foregoing reasons, defendant's suppression motions and motion for a <u>Franks</u> hearing will be denied, and his severance motion will be denied to the extent he seeks to sever Count Two of the superseding indictment (the firearm count) from the two drug counts for trial, although a bifurcated trial procedure will be ordered.

An appropriate order will follow.

_Gustave Diamond_
Gustave Diamond
United States District Judge

Date: _September 1, 2015_

cc:  Brendan T. Conway
     Assistant U.S. Attorney

     William B. Norman, Esq.
     Norman & Tayeh, LLC
     795 Sharon Drive
     Suite 206
     Westlake, OH 44145

AO 72
(Rev. 8/82)