## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 13-113 |
| | ) | |
| PETER WOODLEY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

Robert J. Colville, United States District Judge.

Presently pending before the Court is an "Emergency Motion for a Modification of his Sentence Based on Extraordinary and Compelling Reasons Related to the COVID Pandemic and § 3553(a) Factors" (ECF No. 240) filed by Defendant Peter Woodley.  Defendant seeks a reduction of his 150-month sentence to time-served and immediate release on the basis that he suffers from extraordinary and compelling medical conditions, specifically hypertension, obesity, and bronchitis, thus subjecting him to higher risks to his health if he contracts COVID-19.  Mot. 6-7, ECF No. 240.  The Government opposes the Motion.  The matter has been fully briefed and is ripe for disposition.  For the reasons stated herein, the Motion will be denied.

## I.  Background

On March 7, 2016, Defendant pled guilty to Counts Two and Three of the Superseding Indictment (ECF No. 71) in this matter, which charged him with: (a) Count Two: possession of a firearm by a convicted felon on or about September 17, 2012, in violation of 18 U.S.C. §§922(g)(1) and 924(e); and (b) Count Three: possession with intent to distribute heroin on or about March 20,

2013, in violation of 21 U.S.C. §§841(a)(l) and 841(b)(1)(C).  The Court notes that Defendant was ultimately found not guilty with respect to Count One of the Superseding Indictment following a non-jury trial.  ECF No. 195.  The Honorable Gustave Diamond, to whom this case was originally assigned, determined that the type and amount of controlled substances attributable to Defendant was 79 grams of heroin, which is the amount involved in the Count Three offense to which Defendant pled guilty.  *See* ECF No. 209 at 3.  The Court further notes that Defendant's guideline range of 210 to 262 months incarceration was ultimately determined by his status as a career offender, pursuant to U.S.S.G. §4B1.1(a), because Defendant was at least 18 years old when he committed Count Three, Count Three was a felony that was either a crime of violence or a controlled substance offense, and Defendant had, at that time, at least two prior felony convictions of either a crime of violence or a controlled substance offense.  *Id.* at 5-7.

The instant case represented Defendant's twelfth adult criminal conviction, and Defendant's substantial and serious criminal history involved several serious drug offenses. Defendant's criminal history score was 12, and, as a career offender, his criminal history category was VI.  ECF No. 209 at 8.  Defendant's adjusted offense level was determined to be 34.  *Id.*  By reason of his acceptance of responsibility, Defendant received a two-level reduction for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a), resulting in a total offense level of 32.  As noted, the applicable guideline range called for a sentence of 210 to 262 months' imprisonment.

On November 8, 2016, Judge Diamond imposed a sentence of 150 months imprisonment, consisting of 120 months at Count Two of the Superseding Indictment and 150 months at Count Three, said terms to be served concurrently to one another, 6 years of supervised release, consisting of 3 years at Count Two and 6 years at Count 3 to run concurrently, with conditions of supervised

2

release as set forth in the Judgment, forfeiture of the firearm at issue at Count Two, and a $200 special assessment. ECF No. 212. The imposition of a fine was waived. *Id*. The Court notes that the sentence of imprisonment imposed by Judge Diamond represents a substantial variance from the guideline range.

Defendant is serving his sentence at the United States Penitentiary in Lewisburg, Pennsylvania ("Lewisburg USP"). According to the records submitted by Defendant, he has served more than nine years of his sentence. ECF No. 240-3 at 5. His anticipated release date is June 21, 2023. *Id*.

On October 21, 2021, Defendant applied to Lewisburg USP Warden Stephen Spaulding for compassionate release under 18 U.S.C. § 3582 (c)(1)(A). ECF No. 240-1. Defendant requested compassionate release based on preexisting medical conditions that he asserted increased his risk of serious illness or death if infected with COVID-19, noting the then-emerging Delta variant. *Id*. More specifically, Defendant asserted that the possibility of contracting COVID-19 is an extraordinary and compelling reason for his early release because he suffers from hypertension, obesity, and chronic bronchitis. *Id*. On October 27, 2021, Warden Spaulding denied Defendant's request for compassionate release/reduction of sentence. ECF No. 240-2. Warden Spaulding explained that, after a review of Defendant's request, he had determined that Defendant did not meet the criteria for compassionate release, and noted the BOP's efforts to contain the spread of COVID-19 and to treat any infected inmates.

Given Defendant's application for compassionate release/reduction in sentence, and the BOP's denial of the same, as well as the passage of 30 days from the receipt of such a request by the warden, Defendant has exhausted his administrative remedy and this Court has jurisdiction to

3

consider and rule upon the instant motion as to Defendant's request for compassionate release.  *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

At this juncture, the Court notes that, while the Court has characterized Defendant's Motion as fully briefed, Defendant has not submitted medical records in support of his Motion.  The Court agrees with the Government, *see* Resp. in Opp'n 2, ECF No. 255, that this failure makes it difficult, if not impossible, to evaluate the severity of any of Defendant's claimed medical conditions. Because the Court would deny the Motion even if the Court were to consider as true Defendant's representations in his Motion and Reply, as currently briefed, as to his claimed medical conditions, the Court will consider his Motion on the record currently before the Court.  The Court further notes that, upon request of Defendant's appointed counsel for additional time to secure Defendant's medical records, *see* ECF No. 256, the Court extended the deadline for the filing of a reply to the Government's Response (ECF No. 255) by a period of thirty days.  After a period of forty-nine days and without seeking leave of Court, counsel filed a two-page, seven-paragraph Reply (ECF No. 258) out of time that did not include the medical records referenced in the motion which sought an extension.  In an abundance of caution, the Court provided counsel thirty additional days to either: (a) file an addendum containing the relevant medical records; or (b) inform the Court that the same would not be forthcoming.  *See* ECF No. 261.  Counsel filed nothing, which the Court now interprets as a concession that an addendum with the referenced medical records will not be filed.[1]

---

1 The Court notes that it takes no personal offense to what can be fairly characterized as counsel's relatively consistent failure to adhere to Court Orders and deadlines in this case, but rather notes the same for purposes of explaining the delay in consideration of Defendant's Motion.  As the docket makes clear, the Court has diligently pursued the filing of all necessary briefing with respect to Defendant's Motion, including the scheduling of several status conferences to discuss if and when the filing of such documents would occur.  Counsel for Defendant had requested an extension

## II.  Legal Standard

Congress passed the First Step Act in 2018, in part, to reduce the growing prisoner population in the Federal prison system.  *See United States v. Simons*, 375 F. Supp. 3d 379, 385 (E.D. N.Y. 2019).  Under the First Step Act, a defendant may ask a district court to reduce his or her sentence for "extraordinary and compelling reasons."  18 U.S.C. § 3582(c)(1)(A)(i).[2]  The First Step Act does not define what qualifies as "extraordinary" and "compelling," but the United States Sentencing Commission has issued a policy statement addressing the topic.  The policy statement gives four circumstances under which extraordinary and compelling reasons could exist: (1) medical condition; (2) age; (3) family circumstances; and (4) other reasons as determined by the

---

of time to file an amendment to Defendant's Motion at the first of these status conferences, *see* ECF Nos. 247 and 248, before eventually adopting Defendant's Motion on February 23, 2022, *see* ECF No. 253.  Defendant's Reply was not filed until May 23, 2022, and, as noted, the Reply did not include the addendum containing medical records that defense counsel indicated may be filed.  The Court then afforded counsel a final opportunity to provide the same, and now considers the Motion on the record before the Court.

[2] The First Step Act provides, in relevant part, that the court may not modify a term of imprisonment once it has been imposed, unless:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

>> (i) extraordinary and compelling reasons warrant such a reduction; or

>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).

Director of the BOP.  *See* U.S.S.G. § 1B1.13 cmt. N.1 (A)–(D).  With respect to compassionate release for a medical condition, the policy statement suggests that courts should consider whether the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1.

The policy statement is not binding on district courts considering defendant-initiated compassionate release motions and, in determining whether extraordinary and compelling reasons exist, courts are free to consider other reasons raised by a defendant that are not specifically contemplated in the policy statement.  *United States v. Andrews*, 12 F. 4th 255, 260 (3d Cir. 2021); *United States v. Bayron*, No. 95-338-1, 2021 U.S. Dist. LEXIS 29846, at *8 (E.D. Pa. Feb. 18, 2021).  The policy statement, however, "still sheds light on the meaning of extraordinary and compelling reasons," and it therefore continues to provide guidance in deciding § 3582(c)(1)(A) motions.  *Andrews¸* 12 F. 4th at 260.  District courts are vested with discretion in their weighing of the § 3553(a) factors and determining motions for compassionate release.  *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020).

If extraordinary and compelling reasons justify the reduction of a defendant's sentence, courts also consider the factors set forth in section 3553(a) and whether the defendant poses a danger to the safety of any other person or to the community.  *See* 18 U.S.C. § 3582(c)(1)(A); *see also id*. § 3142(g).  A defendant has the burden of establishing circumstances warranting his release.  *United States v. Grasha*, 489 F. Supp. 3d 403, 406 (W.D. Pa. 2020); *United States v. Neal*, No. 2:08-CR-00628-JMG-5, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020).

The Court therefore considers the grounds asserted by the defendant, whether or not specifically authorized by the Guideline policy statement.   In particular, the Court considers whether the likelihood of COVID-19 infection, in conjunction with the prisoner's medical condition, rises to the level of extraordinary and compelling circumstances, and, if so, whether the purposes of sentencing would nevertheless be unduly undermined if the defendant were released.

## III.  Discussion

In resolving the instant Motion, the Court has considered Defendant's Motion and attached Exhibits, the record in this case, including the Presentence Investigation Report ("PSR") (ECF No. 202), the United States Probation Office's Recommendation (ECF No. 203), and the Transcript of the Sentencing Hearing in this matter, the Government's Response to the Motion, and Defendant's Reply.

### A. Extraordinary and Compelling Reasons

As noted, Defendant argues that the possibility of contracting COVID-19 while at Lewisburg USP is an extraordinary and compelling reason for his early release because he suffers from preexisting medical conditions, and specifically hypertension, obesity, and chronic bronchitis.  The PSR indicates that Defendant is currently 42 years old.  PSR 2, ECF No. 202. Defendant avers that he has a body mass index ("BMI") of 30.0.  Mot. 8, ECF No. 240.  Defendant asks the Court to consider his conditions in conjunction when ruling on whether he has established an extraordinary and compelling reason for his early release.  *Id.*   In addition, Defendant argues that, as of July 29, 2021, Lewisburg USP was operating at a modified operational level of 3 or "red," Mot. 4, ECF No. 240, which is the highest modified operational level and features what the BOP characterizes as "Intense Modifications."  It bears noting that Lewisburg USP, as of the date

7

of this writing, is operating at a modified operational level of 1,[3] which is the lowest modified operational level and features what the BOP characterizes as "Minimal Modifications." https://www.bop.gov/coronavirus/ (last visited July 7, 2022).  Further, while Defendant takes issue with Lewisburg USP's response to the pandemic, *see* Mot. 4-5, ECF No. 240, the Court notes that Lewisburg USP currently has zero positive inmates (out of 1,130 total inmates) and zero positive staff, https://www.bop.gov/coronavirus/ (last visited July 5, 2022).  Throughout the duration of the pandemic, Lewisburg USP has reported a total of 330 inmates who have recovered from COVID-19, 171 staff who have recovered from COVID-19, and one inmate death.  *Id.*

While Defendant makes several references to his potential vaccination status, it is not clear whether Defendant has received a COVID-19 vaccine.  The Court notes that the BOP has fully vaccinated 293 staff members and 1,123 inmates at Lewisburg USP, https://www.bop.gov/coronavirus/ (last visited July 5, 2022), and that Lewisburg USP's current population is 1,130 inmates, https://www.bop.gov/locations/institutions/lew/ (last visited July 5, 2022).  These figures do not include additional booster shots, nor do they include staff who received their vaccination in the community.  https://www.bop.gov/coronavirus/.  Although the COVID-19 vaccines are effective at preventing most infections, the Court acknowledges that they are not 100% effective.   https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html (last visited July 5, 2022).  Nevertheless, fully vaccinated people who get breakthrough infections tend

---

3 A level 1 modified operational level applies where the medical isolation rate is less than 2%, the facility vaccination rate greater than or equal to 65%, and the community transmission rate is less than 50 per 100,000 over the last seven days.  https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited July 5, 2022).

to have less severe symptoms and are less likely to suffer severe illness than those who are not vaccinated. *Id*.[4]

Again, Lewisburg USP currently has zero confirmed cases among both inmates and staff, and the same weighs against a finding that Defendant faces an unusual risk of infection at his current place of incarceration. *See United States v. Maxshure*, No. CR 2:11-185-2, 2021 WL 2354518, at *3 (W.D. Pa. June 9, 2021) ("Accordingly, there is no evidence that Defendant faces an extraordinary risk of exposure to the Covid-19 virus at his place of incarceration. Although I recognize the potential for Defendant's exposure to the Covid-19 virus at FCI-McDowell, that potential unfortunately exists anywhere in the community."). The Court further notes that the BOP has instituted structured and rigorous rules to mitigate the spread of the virus, including: the institution of quarantining and testing requirements; the implementation of social distancing requirements; the utilization of mask wearing requirements for inmates and staff; the institution of screening requirements for facility staff; and the modification of social visiting to mitigate the spread of COVID-19. https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited July 6, 2022).

"[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*,

---

4 If Defendant has been vaccinated, that fact, while not dispositive, would tend to indicate that Defendant is not at an "unusual risk of COVID-19 infection, or serious consequences therefrom, as a result of his incarceration[,]" because "vaccines are highly effective at preventing infection and, when breakthrough infections occur, at reducing the severity of symptoms." *United States v. Dunich-Kolb*, No. CR 14-150 (KM), 2022 WL 580919, at *6 (D.N.J. Feb. 14, 2022). In the interest of avoiding any confusion and because this Court has not been provided information as to Defendant's vaccination status, the Court notes that a "refusal to be vaccinated in the absence of a legitimate medical justification is fatal to [a] motion for compassionate release" and would undercut the premise of Defendant's Motion. *United States v. Ortiz*, No. 5:18-CR-00264, 2021 WL 1422816, at *3 (E.D. Pa. Apr. 15, 2021).

954 F.3d 594, 597 (3d Cir. 2020).  In order to establish extraordinary and compelling reasons to reduce Defendant's sentence for COVID-related reasons, Defendant must show that he "suffers from a serious condition that increases the likelihood of severe consequences from COVID-19." *United States v. Wragg*, No. CR 15-398, 2020 WL 4015204, at *7 (E.D. Pa. July 16, 2020), (quoting *United States v. Somerville*, No. 12-225, 2020 WL 2781585, at *7 (W.D. Pa. May 29, 2020)).

The Court initially also notes that Defendant's age weighs against granting early release for medical reasons, as Defendant is well under sixty-five years of age.  *See United States v. Clausen*, No. CR 00-291-2, 2020 WL 4260795, at *6 (E.D. Pa. July 24, 2020) ("As [the defendant] is below the age of sixty-five and submits no evidence that he suffers from other conditions making him immunocompromised, he does not qualify under this guidance as being at a greater risk of becoming severely infected by COVID-19.").

Turning to Defendant's claimed medical conditions, the CDC recognizes that obesity can increase the risk of severe illness from COVID.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 5, 2022).  The CDC has explained:

> Overweight (defined as a body mass index (BMI) is 25 kg/m$^2$ or higher, but under 30 kg/m$^2$), obesity (BMI is 30 kg/m$^2$ or higher, but under 40 kg/m$^2$), or severe obesity (BMI is 40 kg/m$^2$ or higher), can make you more likely to get very sick from COVID-19.  The risk of severe illness from COVID-19 increases sharply with higher BMI.

*Id*.  However, with a body mass index of 30.0, as asserted in Defendant's Motion, Defendant's obesity, standing alone or even when viewed alongside hypertension, is in a range where courts have generally denied compassionate release.  *See United States v. Irizzary*, No. CR 14-652-13,

10

2021 WL 735779, at *5 (E.D. Pa. Feb. 25, 2021) (determining that a defendant with a BMI of 31.5 was on the low end of the obesity spectrum and denying compassionate release); *see also United States v. Collazo*, No. CR 99-304, 2021 WL 632678, at *3 (E.D. Pa. Feb. 18, 2021) (denying defendant's motion for compassionate release where defendant had a BMI of 32.4 and suffered from hypertension, noting that "courts have been reluctant in general to grant compassionate release where, as here, mild obesity is the only risk factor presented," and collecting cases).   In addition, Defendant has not shown that his weight "diminishes his ability to provide self-care or that it can be considered a condition from which he is not expected to recover."   *United States v. Dobson*, No. 5:08-CR-00134, 2021 WL 1037852, at *4 (E.D. Pa. Mar. 18, 2021) (quoting U.S.S.G. § 1B1.13, App. Note 1).   Absent any other severe medical conditions, Defendant's weight would not alone constitute a basis for early release, even in light of the COVID pandemic.

With respect to hypertension, the CDC has explained that "[h]aving heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and possibly high blood pressure (hypertension) can make you more likely to get very sick from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 5, 2022).[5]   With respect to chronic bronchitis, the CDC provides as follows: "[h]aving a chronic lung disease can make you more likely to get very sick from

---

5 Defendant's Motion makes clear that he does not suffer from "pulmonary hypertension," but rather relies on the assertion that he "has acute chronic bronchitis - a cardiovascular respiratory immunological condition[] and hypertension combined, in addition to a class 1 BMI of 30.0."   *See* Mot. 7-8, ECF No. 240.   The Court notes that the CDC uses similar language in describing the increased risk of severe illness with respect to pulmonary hypertension and hypertension.   *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 5, 2022).

COVID-19.  Chronic lung diseases can include: . . . Chronic obstructive pulmonary disease (COPD), including emphysema and chronic bronchitis[.]"  *Id.*

When considered in conjunction with one another, and without consideration of the availability and efficacy of vaccines, the current numbers at Lewisburg USP, and Defendant's age, Defendant's claimed health issues would likely support a finding that Defendant has presented an extraordinary and compelling reason for his release.  *See Somerville*, 463 F. Supp. 3d at 597 (granting motion for compassionate release during the early stages of the pandemic and before the wide availability of vaccines where plaintiff had significant history of hypertension, hyperlipidemia, chronic bronchitis, asthma, and obesity).  That said, the Court finds that the totality of the circumstances presented by Defendant do not amount to an extraordinary or compelling reason justifying compassionate release in this case.  Lewisburg USP is currently operating at the lowest modified operational level, due in part to the high rate of vaccination among inmates, and currently has zero positive inmates or staff.  Moreover, the availability of vaccines that are highly effective at preventing infection and, when breakthrough infections occur, at reducing the severity of symptoms, must be recognized.  *See United States v. Doan*, No. CR 09-361-1, 2021 WL 3537152, at *3 (E.D. Pa. Aug. 11, 2021), *aff'd*, No. 21-2599, 2022 WL 1551830 (3d Cir. May 17, 2022) (denying a motion where defendant suffered from, among other conditions, anemia, hyperlipidemia, pre-diabetes, *hypertension*, and *acute bronchitis* due to defendant's vaccination status, the high rate of vaccination at defendant's facility, the low number of infected inmates at staff at the facility, and defendant's previous infection and full recovery).

The Court notes Defendant's argument as to the rise in the rates of COVID-19 cases attributable to the Delta variant, in combination with the fact that it is more contagious, and also

acknowledges the recent spread of the Omicron variant and subvariants and the risk of breakthrough cases despite vaccinations.  Other courts have addressed these recent developments and held that the incarcerated individual may not be safer if released to the general population. *See, e.g., United States v. Grant*, 2022 WL 170860, at *8 (D.N.J. Jan. 19, 2022) ("unfortunately, the increased infection rate reflects a surge of positive cases in American society as a whole due to the Omicron variant; such surges are not limited to BOP facilities."); *United States v. Jaber*, 2022 WL 35434, at *3 (S.D.N.Y. Jan. 4, 2022) ("given the speed with which Omicron is spreading through the unincarcerated population, I cannot say with any confidence that defendant would be safer on the outside than he is where he is."); *United States v. Lipsey*, 2022 WL 180725, at *2 (D. Ariz. Jan. 20, 2022)( "while the Omicron variant appears to cause a greater number of breakthrough cases in vaccinated individuals than prior strains of COVID-19 have, the existing, FDA-approved COVID-19 vaccines are still very effective at preventing serious illness.").  Given Defendant's age, the availability of vaccines, the high rate of vaccination at Lewisburg USP, the fact that Lewisburg USP currently has no positive staff or inmates, Defendant's access to medical care and the protocols in place at Lewisburg USP, and the fact that the current vaccines are expected to protect against severe illness, hospitalization, and deaths with the newer Omicron variant, the Court finds that Defendant has not set forth an extraordinary or compelling reason justifying compassionate release.

Defendant's other proffered reasons are not extraordinary and compelling.  He first argues that he has a verifiable re-entry plan and means of employment available to him.  However, this does not constitute an extraordinary and compelling reasons in and of itself because it does not establish that irreparable harm will result if Defendant is not released.  *See United States v. Claude*,

504 F. Supp. 3d 460, 462 (E.D. Pa. 2020), *aff'd*, 16 F.4th 422 (3d Cir. 2021) (explaining that a "compelling need" is a "need so great that irreparable harm or injustice would result if it is not met").  Indeed, many defendants likely have a plan for when they are released, so the same is not extraordinary.

Defendant also points to rehabilitative efforts while incarcerated.  Mot. 10, ECF No. 240. While commendable, "rehabilitation alone does not qualify him for a reduced sentence as a matter of law." *Clausen*, No. CR 00-291-2, 2020 WL 4260795, at *7 (E.D. Pa. July 24, 2020).  Because rehabilitation cannot suffice on its own as a reason for early release, and because the Court has determined that none of Defendant's other proffered reasons are extraordinary and compelling, his argument here falls short of his burden.

### B. Section 3553(a) Factors

The applicable § 3553(a) factors include: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide punishment, deter criminal conduct, and protect the public from further crimes by the defendant; (3) the kinds of sentences and sentencing ranges available; (4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and (5) the need to avoid unwarranted sentence disparities among defendants committing similar offenses.  *See United States v. Babbitt*, No. CR 18-384, 496 F.Supp.3d 903, 915–16, (E.D. Pa. Oct. 21, 2020).  Additionally, a court must find that the defendant "is not a danger to the safety of any other person or to the community," as provided in 18 U.S.C. § 3142(g).  The statute also mandates:

"The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." *Id*.

The offenses of conviction are plainly and undeniably serious in nature, as they involve Defendant's possession of heroin with intent to distribute and a firearm. Defendant has a substantial and serious criminal history, with the instant case representing Defendant's twelfth adult criminal conviction. Defendant's criminal history involved several serious drug offenses. Defendant's criminal history score was 12, and, as a career offender, his criminal history category was VI. ECF No. 209 at 8. As noted, the applicable guideline range called for a sentence of 210 to 262 months' imprisonment. The Court finds that Defendant presents a danger to the community due to the nature of the offenses of conviction and his criminal history. His continued incarceration will protect the public from harm and will provide general and specific deterrence with respect to similar criminal conduct.

As for the need for the sentence imposed to serve the enumerated purposes of punishment, 18 U.S.C. § 3553(a)(2), the court should "impose a sentence sufficient, but not greater than necessary, to comply with [these] purposes." 18 U.S.C. § 3553(a). The Court acknowledges the Sentencing Commission data, cited by the Defendant, which indicates a lowered rate of recidivism of offenders aged 40 to 49 whose primary offense involved drug trafficking. *The Effects of Aging on Recidivism Among Federal Offenders*, at 25. The Court finds however, that, given the serious nature of the offenses of conviction, the purposes of his punishment would not be served by his release at this time.

The next relevant factor is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. §

15

3553(a)(6).  While Defendant has served a substantial portion of his sentence, the Court again notes that the period of incarceration imposed in this case involved a significant downward variance, and Defendant was sentenced well below the advisory guideline range and the statutory maximum penalty.  His release now would cause sentence disparities among defendants convicted of similar conduct.

As for Defendant's danger to others or to the community, the Court finds that Defendant poses a danger to the safety of others or to the community under the factors listed in 18 U.S.C. § 3142(g).  These factors weigh both the defendant's possible danger to the community and the defendant's likelihood to appear at trial.  The factors that weigh danger to the community include "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, ... community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).  Defendant was convicted of serious offenses involving dangerous drugs and weapons, and he was determined to be a career offender.  The danger to others or the community posed by Defendant weighs against granting compassionate release.

The sentence of imprisonment of 150 months imposed by Judge Diamond represented a substantial variance from the guideline range, and the Transcript of the Sentencing Hearing reflects the serious, careful, and thoughtful consideration Judge Diamond gave to the § 3553(a) factors in imposing that specific sentence.  The Court will not disturb that sentence on the record presently

before the Court.  The Court finds, in sum, after a consideration of all relevant 3553(a) factors, that

a reduction in sentence is not warranted in this case.

**IV.  Conclusion**

For the foregoing reasons, Defendant's motion seeking a reduction in his sentence is

denied.  An appropriate order follows.


DATED:  July 6, 2022                              s/*Robert J. Colville*
                                                   Robert J. Colville
                                                   United States District Judge

cc:     Record counsel via CM-ECF
        United States Probation
        Bureau of Prisons